## SUPREME COURT—IN BANCO.

### JANUARY TERM—1872.

*Allen, Ch. J., Hartwell and Widemann, J. J.*

CHARLES KANAINA *vs.* THOMAS LONG.

ADVERSE POSSESSION dates only from a LAND AWARD, which interrupts previous prescription.

A LAND AWARD of an Ili does not include HOUSE LOTS.

ALLEN, C. J.: This is an action of ejectment brought to recover possession of a lot of land in Honolulu, and described as part of the Ili of land of Waikahalulu. The plaintiff claims as sole heir to the real estate of Queen Kalama, and that the land in question is a part of the Ili of land of Waikahalulu which was awarded by the Board of Land Commissioners to Hazaleleponi Kalama, in May, 1854. To support this position, the plaintiff introduced Makalena, a

surveyor, who testifies that he was requested by the then Minister of the Interior, but now His Majesty the King, to map out the different Ilis of land embraced in Honolulu. He presents a map, which he says he copied from an old map of Honolulu in the Interior Office, and that he laid down the boundaries of Waikahalulu as given him by His late Highness M. Kekuanaoa and Mr. Charles Kanaina, the present plaintiff. The lot marked on the plan is described as follows:

Commencing at the sea-side at the foot of Punchbowl Street, thence running up said street to a point a few rods makai of the Palace Walk, thence running in a northerly direction to Beretania Street, thence northerly on Beretania Street to a point about midway between Nuuanu and Maunakea Streets, and thence to the sea, and by the sea to the first mentioned boundary; and this is termed Waikahalulu makai, as we understand it by the map, and within these boundaries the land in question is situated.

He testifies that he had great difficulty in finding any one who could give the boundaries of Waikahalulu. There were other witnesses who testified from the declarations of others to the correctness of the map when accompanying the surveyor.

The principal evidence given in this case as to the accuracy of the map, is the approval of the boundaries by M. Kekuanaoa, the then recognized owner of the Mililani premises.

It is contended by the counsel for the plaintiff that the map is conclusive, because it was approved by M. Kekuanaoa, who at that time was in possession as owner of the property in question, and had occupied the same by himself and his devisors for many years, and upon which he had made valuable improvements. Had Kekuanaoa virtually relinquished his title, would not some other evidence have been given than the comparatively loose conversation of

those accompanying the surveyor, more especially when the Land Commission had limited the award of Kalama to the mauka portion of Waikahalulu? This testimony is too loose and unsatisfactory to defeat the title to real property upon, which he and his devisors had been in possession for nearly forty years, and on which he had made valuable improvements. This, of itself, can not be regarded as a conclusive bar to his title. Indeed, the boundaries as laid down on the map may have been correct, and yet the title of M. Kekuanaoa not necessarily affected by it.

It appears that Manuia and his wife, Kaupena, occupied the premises at and before 1829, when Manuia died, and Kaupena gave the lot in question to her brother, Namauu. Namauu, with his wife, Kapoli, resided on the lot until his death in 1848, and Kapoli continued to reside there until a short time before her death in 1870. Namauu by his will devised all his property to M. Kekuanaoa, who was enjoined by the testator to support and protect Kapoli and Kaupena, and to allow them to live under him. In 1852, M. Kekuanaoa built a house on the lot, in which Kapoli first lived, and in 1854, Princess Victoria Kamamalu resided there with Mr. Ii. Ii continued to occupy the house till 1870, shortly before his death. He paid no rent, and occupied by permission of Kamamalu, Kekuanaoa, and their heirs. The lot is situated directly opposite the Palace. His Highness M. Kekuanaoa married His Majesty's sister Kinau, and Princess Victoria was their daughter.

It is contended by the counsel for the defendant that even if the Mililani premises were included in the award to Queen Kalama, that the defendant has a prescriptive right by virtue of possession of more than twenty years from the date of the mahele; and the question arises whether the time of the adverse possession should date from the mahele in 1848, or from the award, May, 1854.

It is true, as contended, that Queen Kalama took her land

of Waikahalulu by virtue of the gift of her husband, Kamehameha III, as declared by him, by the great mahele of 1848. The mahele was the basis of a title. It was one of the conditions, however, of the mahele, that the title should be confirmed by the award of the Board of Land Commissioners. This Board was a Court of Record, and here was adjudication of which all parties in interest were obliged to take notice. And the date of adverse possession must be from the date of the award. It is in no material respect different from the case of a claim for land made in any other Court of competent jurisdiction, and sustained. If the party continued in adverse possession, after the judgment, the date of such possession is from the latter date.

It was ample notice to the person in possession that his claim was disputed. It ceased to be uninterrupted possession the moment a demand of possession was made. An adverse possession must be within the knowledge and acquiescence of the owner, continuous and uninterrupted.

The Land Commissioners made an award to the Hawaiian Government when they presented their claim for the makai, or sea portion of the Ili of Waikahalulu, on the eastern side of the harbor of Honolulu.

### NO. 11,219.—THE HAWAIIAN GOVERNMENT.

In the claim of Hazaleleponi Kalama, No. 4,452, for the Ili of Waikahalulu, in Honolulu, Island of Oahu.

This is a claim by the Hawaiian Government for the makai or sea portion of the Ili of Waikahalulu, on the eastern side of the harbor of Honolulu.

After duly weighing all the evidence on this claim, the Board of Land Commissioners do hereby decide that the land in question, together with all the rights and privileges thereunto appertaining, belongs to the Hawaiian Government; and that Hazaleleponi Kalama has no right whatever therein, for the following reasons, viz :

*First*—Because it appears from the evidence presented to

the Board that the land in question has been under the control of the public authorities from ancient times; and that since the organization of His Majesty's Government that control was undisputed until the year 1850, when Mr. Charles Kanaina raised an objection on behalf of Her Majesty Queen Kalama, after the King in Council had granted a part of said land to the North Pacific Navigation Company.

*Second*—Because it appears further by the evidence, that at the time of the great division of lands in the year 1848, in which the Ili of Waikahalulu is said to have been given to the Queen, it was distinctly understood that she was to have only the mauka portion of Waikahalulu, the makai part being clearly regarded as having been set apart for the use of the government.

This would seem to be conclusive of the rights of Queen Kalama. The makai portion as described was the property of the government, and does this makai portion include the whole of the makai portion of the Ili of Waikahalulu? If the map is a true description of the Ili, it includes not only the makai portion, but a large number of the most valuable house lots in Honolulu, and which had been in the possession of parties without a claim of title by the Konohiki for a long period of time. The award to the Queen cannot legally include them on two grounds; first, because her rights were confined to the mauka portion; and secondly, had they not have been by her award, she could not be entitled to the house lot within the limits of the Ili. The following remarks occur in the principles adopted by the Board of Land Commissioners to quiet land titles, vol. 2, statute laws, 84: "But between the ownership for cultivation and mere building lots there are often broad lines of distinction. These building lots were never bestowed by the King, or Lords for the purpose of being given out to tenants as was uniformly the case with lands suitable for cultivation. It follows, therefore, that (with some exceptions, which in all cases must be proved) in

Charles Kanaina *v.* Thomas Long.

relation to building lots there is no third class of persons having the rights of Lords over tenants. The exceptions in those cases would be where individuals having received building lots from the King for their own particular use, those individuals have themselves, for some consideration, expressed or implied, transferred said lots to third parties." This exception does not apply to the rights of heirs or devisees.

In the case of Keelikolani *vs.* Robinson, 2 Haw. Rep., 548, on which were at issue the title, rents and profits of what was known as the "Point" or Pakaka, the counsel of the respondent contended that it was necessary for the complainant to show that Pakaka was awarded by the Land Commissioners to those from whom she derived title, as the fee of that lot had become vested in the Queen Dowager as a part of Waikahalulu. Upon this point of the defence the Court say :

"It appears that in the division of 1848, the land called Waikahalulu, within the ancient boundaries of which Pakaka is situated, was granted by the King to Queen Kalama, and her title was subsequently further perfected. Under the general rule that the party holding an award or patent for an ahupuaa is the owner of all the land embraced within its boundaries except such portions of it as have been awarded by the Land Commissioners to other persons, it is contended by counsel for the respondent, that unless the complainant has shown that Pakaka was awarded by the Land Commission to Leleiohoku or Pitt Kinau, the fee of that lot has become vested in the Queen Dowager as part of Waikahalulu, and that in consequence, she, and not the complainant, is now the owner of the rights formerly possessed by Kalaimoku and Leleiohoku. This argument would be entitled to weight if the rule relied upon could be held to apply in this case ; but we must hold the reverse. In our opinion upon the grant of Pakaka to Kalaimoku by Kaahumanu, which was the same as a grant from the King, it ceased for-

43

ever to form part of Waikahalulu as held by the Konohiki. Pakaka, part of which was known as the King's wharf, thenceforward became like many other town lots situated within the natural boundaries of Waikahalulu, a portion of a new class of real property which was not covered by the law of 1839, the Great Division, nor the laws of ordinary kuleanas. A part of the remarks already quoted from the principles of the Land Commission may be cited here again: "It follows, therefore, that (with some exceptions, which in all cases must be proved) in relation to building lots, there is no third class of persons having the rights of lords over tenants." The Queen Dowager, in her capacity of Konohiki of Waikahalulu, could not have been recognized as a counter claimant for Pakaka before the Board. If such a lot escheats for want of heirs, it escheats to the State and not to the ancient Konohiki. The commutation payable upon town lots awarded by the common freehold titles, is payable to the government and not to the lord of the Ahupuaa. In our opinion, if to-day the title which Kalaimoku formerly possessed in Pakaka is not legally vested in his heirs, it might be recovered by the Hawaiian Government, but never by the Lord of Waikahalulu."

We are of opinion that the principle of the foregoing case applies with equal force to the case at bar. It appears that the lot in question was occupied as a residence by those under whom the defendant claims from a period commencing prior to 1829, and that prior to the date of the award of the Ili to Queen Kalama, M. Kekuanaoa made valuable improvements upon it. There was a broad line of distinction between this lot and one simply for cultivation. It was wisely declared by the law that the building lots, or town lots as they were sometimes called, formed a new class of real property—not affected by the rules of the ordinary Kuleanas, and we regard the lot in question as of that class.

There were other points made and discussed with ability

and learning by the counsel for the parties, but their deci-sion is not necessary in the adjudication of the present case.

Judgment for plaintiff is reversed. Let judgment be entered for the defendant with costs.

ELISHA H. ALLEN, <em>Chief Justice.</em>

For reasons of which I file herewith a statement, I do not regard the defendant's exceptions as sustained ; but on the ground now presented, viz. : that awards of Ilis do not affect house lots, I think the defendant should take judgment.

ALFRED S. HARTWELL, <em>Justice.</em>

H. A. WIDEMANN, <em>Justice.</em>

A. F. Judd for plaintiff.

C. C. Harris and R. H. Stanley for defendant.

Honolulu, February 28th, 1872.