C. C. HARRIS *vs.* H. A. P. CARTER, J. MOTT SMITH, and J. O. DOMINIS, Commissioners of Crown Lands.

EJECTMENT. BEFORE JUDD, J.

MARCH, 1877.

The Mahele of 1848, and ancient Hawaiian land tenures, considered, and defined.

A release by the Mahele from the King to his Queen is good.

Ahupuaa, Ili, and Ili Kupono, defined.

Although the grant of an ahupuaa ordinarily includes all the land within its boundaries, yet as all the Ilis recognized in the Mahele and awarded by the Commission were undoubtedly *Ili Kuponos,* having their own distinct identity, the Court holds that such *Ili Kuponos* were not included in the grants of the ahupuaas within whose boundaries they lie, it not being clearly expressed or manifestly intended that they should be so included.

Although there is no prescription against the state, the King, as an individual, cannot claim this immunity.

The King did not have to go to the Land Commission for confirmation of his titles in his reserved lands.

DECISION OF JUDD, J.

This is an action of ejectment. The complaint was filed January 20th, 1875, and on the same day service was admitted and the jury waived by the then Commissioners of Crown Lands— J. S. Walker, R. H. Stanley and J. O. Dominis.

On the 20th January, 1877, the present commissioners were substituted as defendants on motion of the plaintiff. The plea

of the general issue was then filed by plaintiff's consent, and the case argued and submitted on the 23d of January.

The plaintiff claims title to the Ili of Kawailoa, in the Ahupuaa of Kailua, Koolaupoko, Oahu, and to the Ilis of Kaluapuhi, Halekou, Kuou, Waikalua, Keaahala, Kahalekauwila, and Kanohouluiwi, in the Ahupuaa of Kaneohe, Koolaupoko, Oahu; and shows in evidence as follows:—

1. The "Mahele" or "Great Division" of 1848, of the Ahupuaas of Kailua and Kaneohe to Hakaleleponi Kalama, the Queen of Kamehameha III.

2. Awards of the Land Commission to Queen Kalama, dated May 20th, 1854, issued April 13th, 1855, upon claim No. 4452, designated as Apanas 12 and 13, for the Ahupuaas of Kailua and Kaneohe respectively.

3. Will of Kamehameha III., who died December 15th, 1854, dated the 2d day of April, 1853, admitted to probate January 27th, 1855, in which the said Ahupuaas of Kailua and Kaneohe are, with other lands, devised in fee simple to Queen Kalama.

4. The admission that Queen Kalama died intestate 20th September, 1870, leaving as her heir-at-law His Highness Charles Kanaina.

5. Deed of Charles Kanaina to the plaintiff, dated 1st of May, 1871, of all the right, title, and interest which the late Queen Kalama possessed at the time of her decease in and to the Ahupuaas of Kailua and Kaneohe.

The plaintiff claims that, by virtue of the above-recited chain of title, Queen Kalama was entitled at the time of her decease to the whole of the Ahupuaas of Kailua and Kaneohe, and to the aforesaid Ili of Kawailoa in the Ahupuaa of Kailua aforesaid, and the said Ilis of Kaluapuhi, Halekou, Kuou, Waikalua, Keaahala, Kahalekauwila, and Kanohouluiwi in the Ahupuaa of Kaneohe, and which are included in and are a part of the said Ahupuaas, and which by deed of C. Kanaina are conveyed to the plaintiff.

It is clear to me that the plaintiff's title is not affected by the fact that the Mahele of 1848 of these lands was made by the

King to his own wife. Kalama was Kamehameha III.'s Queen, but she was also his subject, and so far as this Mahele is concerned, could take direct from the King, her husband, like any other chief.

It is also clear that the title to the Ahupuaas of Kailua and Kaneohe is in the plaintiff.

The principal question remains to be considered, viz: Do the grants of these Ahupuaas include and carry with them the so-called "Crown Ilis," above enumerated? I suppose it will not be questioned that the grant of a tract of land which is described either by survey or in any other sufficiently definite mode, will be held to include all that is within its boundaries. This may be illustrated thus: If a man sells his house-lot, the conveyance will be held to include the fountain or the garden which is in the house-lot.

So a grant of an Ahupuaa will include the grantor's fishponds or kalo patches lying within the Ahupuaa.

The argument is made that an Iliaina is a portion or sub-division of an Ahupuaa, and therefore the grant of an Ahupuaa includes the Ilis lying within its circumscribing boundaries. And this reasoning is applied to the present case as follows: When Kamehameha granted, at the great Mahele, the Ahupuaa of Kaneohe to Kalama, he granted whatever made up that Ahupuaa; that is, all the Ilis within it not granted to other persons.

Here it becomes necessary to examine the nature of the land tenures in this Kingdom, and particularly the great Mahele of 1848. As to the former, the "Principles adopted by the Board of Commissioners to Quiet Land Titles," 2 Hawn. Statutes, p. 81, *et seq.*, furnishes us a clear exposition, and in the investigation of the latter I have been much aided by the decision of the Full Court in 1864, "In Re Estate of His Majesty Kamehameha IV.," 2 Hawn., 715, written by the late Mr. Justice Robertson, our best authority on such matters.

It seems that after long and patient investigation in which the patriotism of the King and chiefs was often severely tested,

it was finally settled and fully established that there were but three classes of persons having vested rights in the lands of this Kingdom. First, the King; second, the landlords, comprising the chiefs and Konohikis; third, tenants, who afterwards became "Kuleana-men." But as each of these classes had rights in most of the lands, in a descending scale, as it were, it became necessary to separate and define the rights of each—or, rather, to partition in severalty to each one his proper share of the whole. It was finally settled that the King should allow the landlord (2d class) one-third; the tenants (3d class) one-third; and retain himself (1st class) one third.

The "Mahele Book," which was put in evidence and which I have carefully studied, is to my mind in effect and substance the record of various deeds of quit-claims between the King on the one hand, and the various chiefs and landowners on the other, of their several interests, each to the other, in the various lands of the Kingdom.

After all these preliminaries were settled, the work began, and the first Mahele was made between the late Princess Victoria Kamamalu (by her guardians) and the King, on the 27th day of January, 1848. This work continued on from one chief and Konohiki to another with the King, taking up one island after another, and going on regularly from day to day, and the last Mahele was signed on the 7th March, 1848.

As an example I copy here the transaction between Queen Kalama and the King, on one page of the Mahele Book, to wit, 146:

### KO KAMEHAMEHA III.

| Na Aina. | Ahupuaa. | Kalana. | Mokupuni. |
|---|---|---|---|
| "28 different............ | Ilis in Wailuku........ | Puali. Kom............. | Maui. |

"Ke ae aku nei au i keia Mahele, ua maikai, Ko ka Moi na Aina i kakauia maluna. Aohe o'u kuleana maloko.

                    "HAZALELEPONI KAPAKUHAILI. [L.S.]
"Hale Alii, 11 Feb., 1848."

                    (*Translation of the above.*)
"I hereby agree to this division; it is satisfactory. The

lands above inscribed are the King's; I have no right to them.

HAZALELEPONI KAPAKUHAILI. [L.S.]

Palace, 11 Feb., 1848."

On the opposite page, 148:

KO HAZALELEPONI KALAMA.

| Na Aina. | Ahupuaa. | Kalana. | Mokupuni. |
|---|---|---|---|
| Kula | Ahupuaa | Puna | Hawaii. |
| Kapalaalaea | " | Kona | " |
| Kalahuipuaa | Ili no Waimea | Kohala | " |
| Anaehoomalu | " " | " | " |
| Waipio | Ahupuaa | Hamakua | " |
| Kaohe | Ili no Wailuku | Puali. Kom | Maui. |
| Puhiawawa | " " | " " | " |
| Lemukee | " " | " " | " |
| Puuohala | " " | " " | " |
| Manienie | " " | " " | " |
| Waikahalulu | " Honolulu | Kona | Oahu. |
| Kailua | Ahupuaa | Koolaupoko | " |
| Kaneohe | " | " | " |
| Hakipuu | " | " | " |

Ke ae aku nei au i keia Mahele, ua maikai. No Hazaleleponi Kalama na aina i kakauia maluna; ua ae ia'ku e hiki ke lawe aku imua o ka Poe Hoona Kuleana.

KAMEHAMEHA. [L.S.]

Hale Alii, 11 Feb., 1848.

(*Translation.*)

"I hereby agree to this division; it is satisfactory. The lands above inscribed are Hazaleleponi Kalama's; she has permission to take them before the Land Commission.

KAMEHAMEHA. [L.S.]

Palace, 11 Feb., 1848.

The Mahele being completed on the 7th of March, 1848, the King's suzerainty over the lands held by his chiefs and other individuals was at an end, and the list of lands in which the interests of the chiefs and lesser Konohikis had thus been released, became the King's.

But the Mahele, as Judge Robertson expresses it in the

decision above referred to, granted the lands to the chiefs "by freehold title, certified to the Land Commission for its formal award, capable of being converted into an allodial title by payment to the Government of a commutation to be fixed in Privy Council."

It appeared to the King that the land thus released to him might be subjected to commutation in like manner with the lands of the chiefs.

To quote again from the decision in 2 Hawn., 722: "The records of the discussion in Council show plainly His Majesty's anxious desire to free his lands from the burden of being considered public domain, and also his wish to enjoy complete control over his own property.

"Moved by these considerations and by a desire to promote the interests of his Kingdom, he proceeded with an exalted liberality to set apart for the use of the Government the larger portion of his Royal Domain, reserving to himself what he deemed a reasonable amount of land as his own estate.

"To effect that object he signed and sealed on the 8th March, 1848, two instruments contained in the Mahele Book." The first is as follows:—

"Know all men by these presents that I, Kamehameha III., by the Grace of God, King of these Hawaiian Islands, have given this day, of my own free will, and have made over and set apart forever to the chiefs and people, the larger part of my Royal land for the use and benefit of the Hawaiian Government; therefore, by this instrument, I hereby retain, or reserve ('hookoe' in Hawaiian) for myself, my heirs and successors forever, my lands inscribed on pages 178, 182, 184, 186, 190, 194, 200, 204, 206, 210, 212, 214, 216, 218, 220, 222 of this book, these lands are set apart (or separated off) for me, my heirs and successors forever, as my own property exclusively.

Signed with my name and my seal at Hale Alii, this 8th day of March, 1848.

KAMEHAMEHA.    [L.S.]

Signed and sealed in presence of Keoni Ana, G. P. Judd."
I mark this deed "A."

On the opposite page of the Mahele Book the following deed is inscribed, having the same date:

"Know all men by these presents that I, Kamehameha III., by the Grace of God, King of these Hawaiian Islands, do hereby give, make over and set apart forever, to the chiefs and people of my Kingdom, and convey all my right, title and interest in the lands situated here in the Hawaiian Islands, inscribed on pages 179 to 225, both inclusive, of this book, to have and to hold to my chiefs and people forever. These lands are to be in the perpetual keeping of the Legislative Council (Nobles and Representatives), or in that of the Superintendents of said lands, appointed by them from time to time, and shall be managed, leased, or sold, in accordance with the will of said Nobles and Representatives, for the benefit of the Hawaiian Government, and to promote the dignity of the Hawaiian Crown."

Signed and sealed, etc.

This deed I mark "B."

This deed was executed the same day as the first one above mentioned marked "A," and preceded it, as is evident from the allusion to it in the deed "A." This last deed (B) is the conveyance by the King to the Government of the Government lands. Strictly speaking, the deed marked "A" was not necessary; for, the King being, as Sovereign, the owner of all the lands of the Kingdom, and the chiefs and Konohikis having by the Mahele released their feudatory rights in a large portion of them by name; when he deeded to the Government a portion of these lands, what remained were, of course, his own. But for greater certainty the "deed of reservation," so called, was made. His title to these lands was complete without this deed of reservation, for the outstanding claims in them were released to him by the Mahele.

On the 7th of June, 1848, the Legislature passed "an act relating to the lands of His Majesty the King and of the Government." This act will be found in the Civil Code, pp. 374 to 402, both inclusive.

In the case of the Estate of His Majesty Kamehameha IV.,

this act is called merely confirmatory of the King's previous action. "The Legislative Council simply intended by that act to ratify what had already been done by the King in Privy Council, and hereby bind the nation to its faithful observance forever."

Certainly the King's title to his lands does not date from this act of the Legislature.

On page 220 of the Mahele Book, the Iliainas, which are the subject of this suit, are inscribed among the King's lands reserved. In the second volume of the Mahele Book, as it is called, which is, however, but a summary or index of the lands of this Kingdom, arranged by islands and districts, I find on page 98,

| Land. | Owner. |
|---|---|
| Kailua | H. Kalama |
| Kawailoa | His Majesty |

On page 100,

| Land. | Owner. |
|---|---|
| Kaneohe | H. Kalama |
| Halekou | His Majesty |
| Kahalekauila | " |
| Kuou | " |
| Kanohouluiwi | " |
| Kaluapuhi | " |
| Keaahala | " |
| Waikalua | " |

I do not place much importance upon this, as it was but an index compiled in the Interior Office, and is not conclusive as to title, but it has value as showing the views of those in office at the time. I find also by reference to the Mahele Book that the Ilis of Kawailoa and Waikalua were released to the King by Princess V. Kamamalu, 27th January, 1848; Kahalekauwila, by J. A. Kauwa, 11th February, 1848; Keaahala, by Charles Kanaina, 28th January, 1848; Kaluapuhi, by Kahonu, 2d February, 1848; Halekou, by Kapu, 4th February, 1848; Kanohohuluiwi, by Puhalahua, 3d February, 1848; and Kuou, by Kahoohanohano, 10th February, 1848.

From all this I draw the following inferences: That the Iliainas in question were at the time of the Mahele known and

treated as distinct from the Ahupuaa. They had had different owners or Konohikis under the King, and by virtue of the Maheles of the Konohikis, who released their rights in them to the King, and by virtue of the King's deeds of the 8th of March, 1848, in which the private lands of the King were separated from those of the Government, these Ilis thus became absolutely the King's, subject to the rights of tenants (Kuleana men) whose titles were being settled by the Land Commission.

The Mahele Book shows that the King reserved "lands" of all denominations, not Ahupuaas merely, but "Iliainas" as well. Iliainas were treated as separate from the Ahupuaas. In one case, "Wailuku," Maui, all the Ilis were "maheled" to different Konohikis, and only the Ahupuaa remained to the King.

In the Ahupuaas of "Kailua" and "Kaneohe," numbers of Ilis were "maheled" or released to various chiefs and Konohikis by the usual form of Mahele certificate, which directed the parties to "the Land Commission for formal award of the same."

Now, although these maheles were executed day after day until the work was completed, it was because it was too great a task to be all completed in one day, and they might well have all been dated on one and the same day. It was all one act. None of the maheles by the King to any chief could claim by virtue of its earlier date any priority or superiority of title over the mahele by any chief to the King.

The whole work was one scheme; one part was contemporaneous with every other part.

The mahele executed by the King to Queen Kalama of the Ahupuaas of Kailua and Kaneohe, surrendered these lands to her; the various maheles executed by the Princess Kamamalu, Charles Kanaina, and others, of the Iliainas in question, released all their rights in them to the King, who already held the superior title in them as sovereign.

I cannot see, therefore, how, in any manner, the deed of the King of March 8, 1848, formally reserving these Iliainas to him-

self, which we have seen was unnecessary, or the Act of June
7th, 1848, which was merely confirmatory, affected his title to
those Ilis in the least. How then could these deeds, or the Act
of the Legislature referred to, be construed to revoke or disaffirm
the Mahele of the Ahupuaas of Kailua or Kaneohe to Queen
Kalama? The King's deed of March 8th, 1848, did not affect
these Ahupuaas in the least—it had no reference to them any
more than if the Iliainas reserved were situated in other Ahu-
puaas than these—in other districts than Koolaupoko, or on
other islands than Oahu.

I have said there were other Iliainas in the Ahupuaas of Kai-
lua and Kaneohe which were "maheled" to various chiefs and
claimants.

They took these maheles to the Land Commission and re-
ceived their awards for them. If the mahele of the King of
the Ahupuaas of Kailua and Kaneohe swept off and included
in them the King's Iliainas which were within the limits of
these Ahupuaas, the same reasoning would sweep off, in the
grant of the Ahupuaas, those other Iliainas, also within the
limits of these Ahupuaas, which were "maheled" to those other
chiefs.

The subsequent awards of the Land Commission for the
Iliainas of the other chiefs would make their case no stronger as
against the effect of the mahele of the Ahupuaa to the Queen.

The King could not perfect his own already perfect title to
his own Iliainas. No one would seriously contend that the
King was obliged to go to the Land Commission for awards or
patents of his own lands, even for commutation purposes, when
we bear in mind that he had surrendered to the Government by
far the greater portion of the lands that remained his, which
extinguished completely the Government right to commutation
in what was left.

One perfect title is as good as any other perfect title.

The King's title to the Iliainas, which are subject of this suit,
was perfect. So were also the titles of those chiefs, who had
Iliainas in the same Ahupuaas "maheled" to them, perfect so

far as the King was concerned. They had, of course, to follow the mahele up with an award, and were entitled to Royal Patents on paying the Government Commutation.

When I say that both these classes of titles are "perfect," I must always be understood as qualifying this by the statement that these maheles and subsequent awards were subject to the rights of native tenants. These tenants, on taking out their Kuleanas, paid no commutation to the Government, for the holder of the award of the Ahupuaa or Iliaina, out of which they were taken, settled for the whole Government commutation. In the towns of Honolulu, Lahaina, and Hilo, the awards of Kuleanas for houselots were subject to commutation, there being no superior lord or chief over them whose Ahupuaa or Ili they were included in and whose commutation covered their's. See Principles adopted by the Land Commission, page 84, and *Keelikolani vs. Robinson*, 2 Hawn., 547, and *Kanaina vs. Long*, 3 Hawn., 332.

I here quote from *Keelikolani vs. Robinson*, as follows: "Under the general rule that the party holding an award or patent for an Ahupuaa is the owner of all the land embraced within its boundaries, except such portions of it as have been awarded by the Land Commission to other persons, it is contended by counsel for the respondent that unless the complainant has shown that Pakaka was awarded by the Land Commission to Leleiohoku or Pitt Kinau, the fee of that lot became vested in the Queen Dowager as a part of Waikahalulu, and that in consequence she, and not the complainant, is now the owner of the right formerly possessed by Kalaimoku and Leleiohoku." "In our opinion upon the Grant of Pakaka to Kalaimoku by Kaahumanu, which was the same as a grant by the King, it ceased for ever to form a part of Waikahalulu, as held by the Konohiki."

I apply this reasoning to the case before me in this way: Upon the execution of the releases by Princess Kamamalu, Charles Kanaina and the others (by their maheles) of their interests in the Iliainas in question, "they ceased forever to

form a part of the Ahupuaas as held by the Konohikis." And
our case is even stronger, for the grant of Pakaka by Kaahu-
manu to Kalaimoku initiated his title—the maheles of Princess
Kamamalu and the others but released to the King an outstand-
ing claim in lands in which he already held title as sovereign.

I do not deem it necessary to discuss the question here,
whether the Land Commission had the legal authority to put
into the land awards issued by them the condition of forfeiture
if the Government Commutation was not settled within thirty
years, for we are considering the King's title to the Iliainas in
question.  He had delegated a portion of his authority to the
Land Commission to settle his rights as the Chief Executive of
the Government in other lands with the claimants, but he did
not go to the Commission for an adjudication of his own titles
in what remained of his own lands, after surrendering liberally
to his chiefs, Konohikis and Government.  No one would seri-
ously contend that the King should have procured awards of
his own lands from the Land Commission, or signed Royal
Patents to himself for them.

I think that erroneous opinions have sometimes prevailed as
to what are "Ahupuaas" and "Ilis."

An Ahupuaa has been called the "unit" of land in this coun-
try; but it is by no means a measure of area, for Ahupuaas
vary exceedingly as to size.  Many Ahupuaas are divided into
Ilis; other Ahupuaas have no Ilis in them, as for instance,
Kualoa and Waimanalo on this island.

There are two kinds of Ilis.  One, the Ili of the Ahupuaa, a
mere subdivision of the Ahupuaa for the convenience of the
chief holding the Ahupuaa, as for instance, the Ilis of Lihue
and Waimanalo, in the Ahupuaa of Honouliuli.  The Konohikis
of such Iliainas as these brought their revenues to the chief
holding the Ahupuaa.

The other class were the "Ili Kupono" (shortened into "Ili
Ku.")  These were independent of the Ahupuaa, nor did they
pay general tribute to it.

In some cases these Iliainas are very numerous, absorbing the

larger part of the Ahupuaas. A well-known case is the Ahu-puaa of "Waimea," Hawaii, of which the Ilis of "Waikoloa" and "Puukapu" form about nine-tenths.

There are some Ilis that do not seem to be in any Ahupuaa—as for instance, the Ilis mentioned in pages 400 and 401 of the Civil Code, and set apart as "Fort Lands" for the support of the soldiers. They are mentioned as "Ilis of Honolulu," and yet there is no Ahupuaa of "Honolulu," which is but a name for the locality; and I believe there are no lands known as the Ahupuaas of Manoa, Makiki, Kapalama, or Waikiki, though there are numerous Ilis and Kuleanas awarded under these names, which I understand to be names of localities. It may be, however, that as all the territory of these lands was ab-sorbed by the Ilis and the Kuleanas, there was nothing left to be applied for or granted.

The Ilis in question in this suit are not distinctly named "Ili Kuponos," this name not being preserved in the mahele; but all the Ilis that were recognized and treated in the mahele and awarded by the Commission were undoubtedly "Ili Kuponos." This name was dropped, for, when separated from the Ahupuaa by mahele and subsequent award, its necessity was gone. All other Ilis went with the Ahupuaa in which they were situated, and were not further distinguished.

The inquiry just gone into is pertinent to the case before us, as showing that the "Iliaina" was a well-known division of land with its own identity, and I cannot see how the mahele or the award of the Ahupuaa of Kailua carried with it an Ili having its own distinct identity—unless clearly expressed or manifestly intended, and it is not so expressed, for the mahele calls for the "Ahupuaa" only.

All the Acts of the King repel the idea that he so intended it. He preserved the separate identity of these Ilis by receiving specific re-leases for them in the mahele, naming them in his deed of reservation which was confirmed by Act of the Legisla-ture.

Having satisfied myself that the title of the "Iliainas" in

question remained in the King, notwithstanding the mahele and award of the "Ahupuaa" to Queen Kalama, the question remains: Did the devise under the Will of Kamehameha III. to the Queen carry these Ilis to her?

Article fourth of the will is as follows: I hereby give and devise to my Queen Hazaleleponi Kapakuhaili, the lands mentioned below, in fee, in lieu of her dower, if she accepts it. These are the lands:—

| Kula | Ahupuaa | Puna | Hawaii |
|---|---|---|---|
| Kapalaalaea | " | Kona | " |
| Kalahuipuaa | Ili no Waimea | Kohala | " |
| Anaehoomalu | " " | " | " |
| Waipio | Ahupuaa | Hamakua | " |
| Kaohe, etc. | Ili no Wailuku | | Maui |
| Waikahalulu | " Honolulu | | Oahu |
| Kailua | Ahupuaa | Koolaupoko | " |
| Kaneohe | " | " | " |
| Hakipuu | " | " | " |

Article five constituted his adopted son, Alexander Liholiho (Kamehameha IV.) his residuary devisee. I cannot see that this devise conveyed anything to the Queen. She already had these lands by the mahele, and her awards had been adjudicated by the Land Commission. The King's devise, however, confirmed her title and removed all question as to the validity of the mahele or award to his Queen.

But the King devises the "Ahupuaa" of "Kailua" and "Kaneohe," and there are no words from which it can be deduced that anything more than those "Ahupuaas" was intended by the King. These "lands" were devised by him— and the list contains Ilis as well as Ahupuaas—and the Ilis in question in this suit are not mentioned in this list.

As to possession as the basis for a title by prescription, the title to these Ilis having been found to be in the King Kamehameha III. at the time of his death, it passed by force of his will to Kamehameha IV., and it has been settled by the decision often referred to in this opinion, in the estate of Kamehameha IV., that the title in that King's lands passed to Kamehameha

V., his successor, and is now in the Commissioners of Crown Lands, the defendants at bar.

Adverse possession of these Ilis could have been commenced by Kalama from the death of her husband the King, December 15, 1854, or as soon as his coverture ceased.

I understand that there is no prescription against the State, (see *Kahoomana vs. Minister of Interior,* 3 Hawn., 635) but the King as an individual cannot claim this immunity. *Nullum tempus occurrit regi* means the King as representing the Government and as guardian of the lands of the State.

The evidence as to actual possession or occupancy of these Ilis was not laid fully before me, except in the case of the Ili of "Keaahala," for which a lease of Kamehameha IV. is shown, dating in 1856, which would rebut the claim of plaintiff's title by adverse possession of this Ili.

If plaintiff can show that Queen Kalama or her heirs or assigns have had, during twenty years last past, adverse, uninterrupted and undisputed possession of any or all of the Ilis in question, this would be a complete bar to an action by the defendants to recover them.

Having arrived at the above conclusions of law and fact on the points submitted to me, either party is now at liberty to move the Court further as to them may seem best.

*Plaintiff,* in person.

*A. S. Hartwell,* for the defendants.

Honolulu, March 21st, 1877.