TERRITORY OF HAWAII, BY LORRIN ANDREWS, ATTORNEY GENERAL OF THE TERRITORY OF HAWAII, *v.* MOSES PUAHI, LIZZIE K. PUAHI AND TAM PONG.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED MARCH 2, 1908.          DECIDED MARCH 26, 1908.

HARTWELL, C.J., WILDER AND BALLOU, JJ.

ADVERSE POSSESSION—*crown lands.*
> Adverse possession of crown lands cannot be shown.

COURTS—*judicial question—crown lands.*
> Following *Territory v. Kapiolani Estate,* 18 Haw. 640, a judicial question is not presented by a claim requiring a ruling upon the constitutionality of Art. 95 of the constitution of the Republic of Hawaii concerning the ownership of crown lands.

PRACTICE—*exceptions.*
> An exception by the defendants to a denial of their motion to order judgment for the defendants at the close of plaintiff's case on the ground that the plaintiff had not shown title does not present the question whether judgment for the defendant M. P. ought to have been given in the absence of evidence of his possession admitted for themselves by the other defendants, nor is the question presented by a general exception to the judgment as contrary to law and the evidence.

OPINION OF THE COURT BY HARTWELL, C.J.

The plaintiff brought ejectment to recover possession of certain lands upon the Island of Oahu alleged in its amended complaint to be part of the public lands of the Territory which

the defendants had unjustly and contrary to law and the·rights of the plaintiff taken into their possession and converted to their use and occupation, for which wrongful acts the sum of $2,000 was claimed as damages. The lands are described by metes and bounds, the area stated being 38.19 acres, excepting therefrom the area of six kuleanas therein described by statement of the numbers of the land awards and the areas, aggregating 3.96 acres. The defendants demurred to the amended complaint on several grounds which need not be stated as the demurrer is not now relied upon.

The demurrer being overruled the defendants filed their answer denying all the allegations in the amended complaint. The cause was thereupon tried by the court, jury being waived. The defendants admitted that the land sued for was reserved by Kamehameha III. for his private use and ownership by act of June 7, 1848, relating to the lands of His Majesty, the King, and of the government, and that it had not been aliened by Kamehameha III. or by any of his heirs or successors in title or by the commissioners of crown lands, the Provisional Government, Republic of Hawaii, the United States or the Territory.

It was agreed that the value of the land exceeds the sum of $5,000, the plaintiff, however, waiving any claim for damages. The plaintiff introduced evidence which, as stated in the bill of exceptions, was sufficient to identify the land and to show that at the commencement of the action it was in the possession of the defendants Lizzie Puahi and Tam Pong, but adduced no evidence of occupancy at that time by the defendant Moses Puahi or to show title in the plaintiff other than by the defendants' admissions above stated.

The defendants' motion for judgment upon the ground that the plaintiff had not shown title being denied they offered to prove that as early as 1863 one Paakai was living on the land in open, notorious and exclusive possession, claiming title against all the world and that he continued so to hold until May 19, 1870; that the defendant Moses Puahi was born on the land

in 1863 and that about May 19, 1870, said Paakai conveyed it to him, and that Moses Puahi and those claiming under him have ever since resided on the land in open, notorious and exclusive possession, claiming title as against all the world. The court refused to admit the evidence on the ground that adverse possession could not run in favor of the defendants as against the commissioners of crown lands, the Provisional Government, the Republic of Hawaii, the United States or the Territory. The court then decided in favor of the plaintiff, filing its written decision upon which judgment was entered. The defendants excepted to the rulings, decision and judgment as contrary to law and the evidence.

It is stated in the defendants' brief that the refusal to order judgment for the defendants, as well as the judgment for the plaintiff, was based upon the proposition that the title had accrued to the United States under the constitution of the Republic of Hawaii, Art. 95, and the Newlands' Resolution of Annexation, and that the right of the Territory to maintain the action was established by the Org. Act, Secs. 91, 99. While admitting that "it would doubtless be too much to expect the circuit courts of this Territory to pass upon the constitutionality of the joint resolution and acts of the federal congress, and however much the Newlands' Resolution and sections 91 and 99 of the Organic Act may infringe the Constitution of the United States, the circuit courts of this Territory are not unjustly reluctant to declare such unconstitutionality," the defendants say that "whether this court would be willing to venture upon such inquiry and determination we can only for the present surmise."

We held in *Territory v. Kapiolani Estate,* 18 Haw 640, that a judicial question is not presented by a claim requiring a ruling that Art. 95 of the constitution of the Republic of Hawaii is unconstitutional, and neither in that case nor in this was any reason suggested for holding the subsequent transfer of title to the United States invalid or unconstitutional.

The question of adverse possession. running against crown lands is one upon which the language of opinions in the past cannot be wholly reconciled. The crown lands were those reserved by Kamehameha III. in the great mahele of 1848, and declared by the act of June 7, 1848 (R. L. p. 1197), "to be the private lands of His Majesty Kamehameha III., to have and to hold to himself, his heirs, and successors, forever; and said lands shall be regulated and disposed of according to his royal will and pleasure subject only to the rights of tenants." From that date until the act of January 3, 1865 (R. L. p. 1226), the crown lands were alienable by the king. *Estate Kamehameha IV.,* 2 Haw. 715. The question whether title by prescription could be acquired within this period has never arisen and could not arise, as upon no theory could a claim by prescription go back of the mahele (*Kahoomana v. Moehonua,* 3 Haw. 635; *Kanaina v. Long,* 3 Haw. 332), nor ripen during the sixteen and a half years intervening between the acts mentioned, particularly in the absence of a statute of limitations. After the passage of the first statute of limitations in 1870, fixing a period of twenty years, Justice Judd, in deciding the case of *Harris v. Carter,* 6 Haw. 195, 209, an action of ejectment brought against the commissioners of crown lands, said:

"The evidence as to actual possession or occupancy of these Ilis was not laid fully before me, except in the case of the Ili of 'Keaahala,' for which a lease of Kamehameha IV. is shown, dating in 1856, which would rebut the claim of plaintiff's title by adverse possession of this Ili.

"If plaintiff can show that Queen Kalama or her heirs or assigns have had, during twenty years last past, adverse, uninterrupted and undisputed possession of any or all of the Ilis in question, this would be a complete bar to an action by the defendants to recover them."

In spite of the language of the majority of the court in discussing this paragraph in *Kapiolani Estate v. Cleghorn,* 14 Haw. 330, 335, we cannot find in the pleadings in *Harris v.*

*Carter* any claim of the plaintiff to title by adverse possession, his claim of title by record being set forth at length, and the only allegation as to possession being the necessary averment that defendants were in possession. If such a claim had been made, it would necessarily have to be supported by parol evidence, particularly as the defendants would have to show only thirty-six days' possession prior to the institution of the action to defeat such a claim, as adverse possession, according to the decision, would have begun upon the death of Kamehameha III., December 15, 1854, and the action was begun January 20, 1875. Nor can we assume that the plaintiff could have anticipated that after he had closed his case without offering evidence of adverse possession the court, instead of giving judgment according to its decision on the paper title, would have reserved leave to move further. Yet the entire case was submitted on record evidence alone, the only "evidence as to actual possession or occupany" being the exhibition of a lease of the one ili of Keaahala from Kamehameha IV. to one John Watson introduced by the defendants.

Under these circumstances we cannot consider the court's statement as to what would happen if the plaintiffs could show certain facts in an action which might be brought by the defendants against them as anything more than obiter dictum, though it was doubtless relied upon by the commissioners in agreeing to a compromise judgment. It is also to be observed that though the period in question covered time subsequent to the act of January 3, 1863, as well as prior thereto, no consideration was given by the court to the effect of that act declaring the crown lands to be the property of the king in his sovereign capacity, to be thenceforth alienable, and to descend with the crown. In *Galt v. Waianuhea,* 16 Haw. 652, the court overruled this dictum in *Harris v. Carter* in so far as the statute running after 1865 was concerned, but did not comment on the discussion of the latter case in *Kapiolani Estate. v. Cleghorn,* 14 Haw. 330, as it did not consider that discussion necessary

to the actual decision. In *Kapiolani Estate v. Cleghorn* crown lands were not involved, but the question before the court was whether the constitutional provision that the king's private lands were inviolable interrupted the running of the statute against private lands of Kalakaua after he became king. In stating that in *Harris v. Carter* the court had actually decided the very question before them the court must have assumed that the status of crown lands prior to 1865, so far as adverse possession is concerned, was identical with that of lands bought by Kalakaua after his accession to the throne, and was governed solely by the constitutional provision under construction which appeared in the constitutions of 1852 and 1864. These assumptions are certainly open to question, particularly in view of the distinction drawn between crown lands and private lands of Kamehameha IV. in *Estate Kamehameha IV.,* 2 Haw. 715, but as the actual decision in *Kapiolani Estate v. Cleghorn* did not depend on this point we prefer not to go further outside the exact point to be decided in this case. In our opinion the law is correctly stated in *Galt v. Waianuhea* and it is immaterial at what period possession of crown lands began, as whatever might be the status prior to the act of January 3, 1865, crown lands were thenceforth the property of the king in his sovereign capacity and inalienable, which would be sufficient to prevent the ripening of any title by prescription (*United States v. Nashville, etc., Ry.,* 118 U. S. 120, 126), and any presumption of a grant in this case is not only not claimed but negatived by the express admission of the defendants. The trial court was therefore right in rejecting as immaterial the testimony offered to show adverse possession.

The remaining question sought to be presented by the defendants in their exceptions is whether, in the absence of evidence that the defendant Moses Puahi had taken the land into his possession to his own use, judgment could properly be rendered against him, or, the action being against the defendants jointly, against any of them.

The defendants' motion for judgment at the close of the plaintiff's case, on the ground that the plaintiff had not shown title, did not present the question now for the first time raised by the defendant Moses Puahi that there was no evidence to show that he was in possession at the time of the institution of the action. He made no motion on this ground. If he had done so the evidence could readily have been supplied, particularly in view of his subsequent offer to prove this very fact. Nor did the general exception by the defendants to the decision as contrary to law and the evidence present this question.

"The object of an exception as contemplated by the statute is to bring to this court a specific question of law upon which the trial court has erroneously ruled to the prejudice of the party excepting, and not to enable a party to cast the entire case upon the court for review. Such a loose method of practice is unfair to both the opposite party and the court." *Fraga v. Portuguese Mut. Ben. Soc.,* 10 Haw. 129.

Exceptions overruled.

*W. L. Whitney,* Deputy Attorney General (*C. R. Hemenway,* Attorney General, with him on the brief), for plaintiff.

*C. W. Ashford* for defendants.