# SUPREME COURT—OCTOBER TERM—1858.

## Oni *vs.* John Meek.

Nor in the power of a konohiki to alienate a single right, conferred by law to the tenant (hoaaina.)

A hoaaina, holding his land by virtue of a fee simple title, is forever freed from the labor formerly due (under the ancient system) to the Government and the konohiki.

If he performs such labor, it is neither by force of law or custom, but in fulfillment of a private contract.

At the passage of the Act of the 6th August, 1850, the former rights of the hoaaina to pasture his animals on the lands of the konohiki, ceased to exist.

The term *people*, as used in the seventh section of the Act of 1850, held to be synonymous with the term *tenants*, as used in the law relating to private fisheries.

Whatever private agreement, as to pasturage, that may have been made between the tenant and the konohiki can not affect the rights of the konohiki's lessee of land, unless he had special notice of such agreement and bound himself to respect its terms.

Justice ROBERTSON delivered the decision of the Court, as follows :

Plaintiff brought an action against the defendant, in the Police Court of Honolulu, to recover the value of two horses, taken by the defendant on his land at Honouliuli, and afterwards impounded and sold, as estrays. The defendant agreed that judgment should be entered against him in the Court below, reserving by consent his right to appeal, in order that the case, which involves some questions of great importance, and will determine the rights of many other persons besides the present plaintiff and defendant, might be heard and decided by this Court.

It appears, by the evidence submitted to us, that the defendant holds, under three several leases, the entire kula land of the ahupuaa of Honouliuli, with the exception of certain portions expressly reserved by the terms of the latest lease, made on the 16th day of February, 1853 ; that the plaintiff is a *hoaaina* of Honouliuli, residing on some part of that ahupuaa,

either upon land awarded to him as a *kuleana*, by the Land Commission, or otherwise ; and that two horses belonging to him were seized as estrays by the defendant's order, on some part of the land leased to him, and carried to the Government pound, where they were subsequently sold under the estray law.

During the argument of the case, great stress was laid by the plaintiff's counsel upon the clause in the lease of the 16th of February, 1853, which reads as follows, viz : " Aole e hiki i keia hoolimalima ke kue aku i ka pono o na kanaka e noho ana ma-lalo o ka malu o ka aoao mua." That is to say : "This lease shall not be construed as conflicting (or interfering) with the rights of the people living under the shade of the party of the first part (the konohiki.)" He argued that by this clause the rights of the plaintiff, and all others living under the shade of the konohiki, were expressly reserved by the grantor, Mr. Haa-lelea ; and that those rights included the right of pasturage for their animals. Neither the lease of the 3d of March, 1846, which covers the Ili of Lihue, nor that of the 15th of July, 1851, which covers the Ili of Waimanalo, contain any clause parallel to the clause we have just quoted from the lease of the 16th of February, 1853. So that before the plaintiff could claim to recover, by force of the reservation in favor of the rights of the people living under the konohiki, made in the lease of 1853, he must first prove that his horses were seized on the land covered by that lease, because it is expressly de-clared in that lease that neither the Ili of Lihue nor the Ili of Waimanalo are included in it, and that the terms and conditions of the several leases made in 1846 and in 1851, are not affected in any way whatever by the lease of 1853. No evidence having been introduced by the plaintiff, to prove that his horses were seized for trespass upon any part of the land covered by the latter lease, we are of the opinion that, so far as his claim de-pends upon the reservation referred to, in said lease, it must fall to the ground.

And if it can be considered that the line of argument set up by the defendant, waived the necessity of proving this, still we are of the opinion that the plaintiff's claim cannot stand upon the narrow basis of the reservation in the lease, for the clause

which we have quoted cannot fairly be construed to be any thing more than simply a reservation of the rights belonging by law to the hoaainas living under the konohiki, on the 16th of February, 1853. We regard the clause therefore as of very little practical importance, inasmuch as those rights would, as it seems to us, have been equally well preserved without such a clause ; and it was not in the power of the konohiki, had he been so disposed, to alienate a single right secured by law to the plaintiff.

But the claim of a right of pasturage, put forward by the plaintiff, is made to rest upon far broader grounds than that just mentioned, which fact renders this case one of great importance, not only to the large landed proprietors throughout the Kingdom, but to thousands of the common people. It is contended on behalf of the plaintiff that he, as a hoaaina of Honouliuli, has a right to pasture his animals on the kula land of that ahupuaa, upon one or both of two grounds ; first, by custom ; or secondly, by statute law.

It appears by the evidence that horses were first introduced on the ahupuaa of Honouliuli about the year 1833 ; that within ten years afterwards they had become numerous ; and that the horses belonging to the hoaainas were allowed to pasture upon the kula land, in common with those of the konohiki. It appears further that, about the year 1851, after the enactment of the new laws, relating to the tenure of land, a large number of the hoaainas of Honouliuli, including, as we understand, Mr. Haalelea's testimony, some who had obtained awards for their kuleanas, and others who had not, came to Mr. Haalelea, the konohiki, and expressing their understanding and belief that under the new order of things they would be cut off from the enjoyment of some of their accustomed rights and privileges, including the right or privilege of pasturage, they offered to continue to labor for him, as formerly, upon the konohiki's labor days, in consideration of his allowing them to enjoy all their accustomed rights and privileges, to which proposition he agreed ; that since that time all the hoaainas who have duly performed their labor on the konohiki's days, have been permitted to pasture their horses on the kula land as formerly ; and that the plaintiff is one of those who have

continued to labor according to that agreement.  It appears, also, that within the three years last past the defendant has repeatedly notified the hoaainas to remove their horses from the kula lands leased by him.

Upon this state of facts, it is argued by the learned counsel for the plaintiff, that he, in common with the other hoaainas of Honouliuli, is entitled to the right of pasturage, by custom. On the other hand, it is contended, on the part of the defendant, that before the Court can sustain this claim on the ground of custom, the custom attempted to be set up must appear to have existed from time immemorial; to be reasonable, to be certain, and not inconsistent with the laws of the land.

While we are of the opinion that the objection urged by the counsel for the defendant against the custom sought to be set up by the plaintiff, that it is not shown to have obtained from time immemorial, is entitled to great weight, we do not think it necesssry to express a conclusive opinion upon that point at present.  For it is obvious to us that the custom contended for is so unreasonable, so uncertain, and so repugnant to the spirit of the present laws, that it ought not to be sustained by judicial authority.  Further, it is perfectly clear that, if the plaintiff is a hoaaina, holding his land by virtue of a fee simple award from the Land Commission, he has no pretense for claiming a right of pasturage by *custom*, for so far as that right ever was customary, it was annexed to the holding of land by a far different tenure from that by which he now holds—a tenure by which the hoaaina was bound to labor a certain number of days in each month, for the immediate lord of the land, and a like number of days for the King or Government, as payment or rent, both for the use of the land and for the enjoyment of the other rights and privileges appurtenant thereto, whereas the very fact that the plaintiff holds his land by virtue of a fee simple title, frees him forever from the labor formerly due to the Government and to the konohiki; he no longer owes, nor can he be called upon to perform such labor, by law, as payment for the use of his land, or for the enjoyment of any right or privilege, and if he performs such labor it is neither by force of law or custom, but in fulfillment of a private contract.  Again, if the

plaintiff claims to be a hoaaina of Honouliuli, holding his land, not independently, upon an award from the Land Commission, but according to ancient tenure, in dependence upon the kono-hiki, and that, therefore he is entitled to the right of pastur-age, by custom, he is met by the testimony of the principal witnesses introduced by himself, to the effect that, in the year 1851, he, in common with the other hoaainas of Honouliuli, admitted that his former right or privilege of pasturage was determined, by the operation of the new laws affecting the tenure of land, and that he has since been permitted to enjoy the right of pasturage for his horses, not by force of law or custom, but in consideration of certain labor which he has performed, in accordance with a special contract with the konohiki, to that effect, made at a time when the right of pasturage could not have been said, with any show of reason, to have become established by ancient custom. And whatever private agreement as to pasturage may have existed between the plaintiff and the konohiki, that, of course, cannot affect the defendant's rights under his leases, unless he had special notice of such agreement, and bound himself to respect its terms.

Let us now pass on to the examination of the principal ground upon which the right of pasturage is claimed by the plaintiff, viz : by statute law. The law referred to is the " joint resolutions on the subject of rights in lands, and the leasing, purchasing and dividing of the same," passed on the 7th day of November, 1846 ; which it is contended, and rightly so, have never been expressly repealed by the Legislature. The plaintiff relies, more particularly, upon a part of the first of those resolutions, which reads as follows, viz ; " The rights of the hoaaina in the land consist of his own taro patches, and all other places which he himself cultivates for his own use ; and if he wish to extend his cultivation on unoccupied parts, he has the right to do so. He has, also, rights in the grass land, if there be any under his care, and he may take grass for his own use or for sale, and may also take fuel and timber from the mountains for himself. He may also pasture his horse and cow and other animals on the land, but not in such numbers as to prevent the konohiki from pasturing his. He cannot make

agreement with others for the pasturage of their animals without the consent of his konohiki, and the Minister of the Interior."

The declaratory enactment was passed by the Legislature at a time when the old system as to the tenure of lands was still in existence, and before the passage of new laws upon the subject of land titles, the operation of the Land Commission, and the great division of 1848, had brought about and perfected that entire revolution in the law affecting rights in land, and land titles, which has taken place since the year 1846, The character of the old system of tenure and the state of titles and interests in land, at the time of the passage of the joint resolutions of November, 1846, may readily be gathered from those resolutions themselves, and from the fundamental "Principles adopted by the Board of Commissioners to quiet land titles, in their adjudication of claims presented to them," to be found on pages 81 to 94 inclusive, of the 2d vol. Statute Laws.   While it is true that the Joint Resolutions referred to have never been expressly repealed, we think there can be ño doubt that, at least those of them which are merely declaratory of the law relating to rights in land, have all been impliedly annulled and superseded by other enactments upon the same subject.

In order to ascertain and declare what is now the law upon that subject, it is necessary to examine and consider together the several enactments *in pari materia*, which are to be found standing upon the statute book.   The Joint Resolutions of November, 1846, were not only declaratory of the rights in land, possessed in common at that time, by the Government, the konohiki, and the hoaaina, but were also, in part, directory as to the mode of leasing, purchasing and dividing of lands, having due regard to the common rights of these several parties.   So far as these resolutions provided for a division of land, their provisions have been entirely superseded by other and more expeditious arrangements; for, while the great division of 1848 separated and defined the land of the King and Government, and that of each konohiki, the action of the Land Commission separated and defined the land of every hoaaina who succeeded in sustaining a claim before the Board.

It was evidently the intention of the Legislature that whenever, in any case, a tract of land was divided between the several parties in interest, those rights which they had previously held in common, while their interests in the land were undivided, should cease to be so held. The fourth Joint Resolution provides that, "If any man wish to obtain an allodial title to the land which he has himself cultivated," he should have the right to petition the Minister of the Interior for the purchase of such land, and if the land was sold and patented, the price obtained therefor was to be divided equally between the Government and the konohiki. The fifth Joint Resolution reads as follows : "Whenever any individual secures an allodial title to his cultivated grounds, as specified above, and the *pasture ground* and uncultivated parts remain, then that remainder shall belong equally to Government and to the konohiki." The seventh Joint Resolution provides that, "If any konohiki wish to have his portion of any given ili or ahupuaa set off to him according to his rights in the same, that he may procure an allodial title therefor, he may petition the Minister of the Interior, on stamped paper, who shall have power, with the approbation of his Majesty in Privy Council, to complete the arrangements for the same, after which there shall be given to the konohiki a patent for the same." Can it be claimed that, after a division of the land between the several parties, in conformity with the provisions just quoted, the hoaaina still had the right to "pasture his horse and cow and other animals on the land" of the konohiki, to an indefinite extent? We think not. It might with equal propriety be contended that he still had the right "to extend his cultivation on unoccupied parts" of the konohiki's land, without his consent. We are much, strengthened in this view of the case by the reading of the Act passed on the 6th day of August, 1850, confirming certain resolutions passed by the King in Privy Council on the 21st day of December, 1849, granting fee simple titles, free of commutation, to native tenants (or hoaainas) for their cultivated lands and house lots, and also protecting the hoaainas in the enjoyment of certain rights therein enumerated, as against the sweeping operation of the konohiki's allodial titles. The third section of that Act empowered the Land Commission to grant

fee simple awards, and to define and separate the portions of
land belonging to different individuals, so that *each man's land
should be by itself.* The sixth section reads as follows : " In
granting to the people their cultivated grounds, or kalo lands,
they shall only be entitled to what they have really cultivated,
and which lie in the form of cultivated lands ; and not such as
the people may have cultivated in different spots, with the
seeming intention of enlarging their lots, *nor shall they be enti-
tled to the waste lands.*"

Upon a careful examination of the Joint Resolutions of
November, 1846, and the Act of the 6th of August, 1850, we
find that several of the provisions of the latter are clearly in-
consistent with those of the former, and we are of the opinion
that, so far as this is true, the provisions of 1846 must be held,
by necessary implication, to be repealed by those of 1850.   The
first, as we have already intimated, were passed while the old
system of land tenure was still in full force, and the rights of
the different parties interested in the land were as yet undi-
vided ; the last were passed at a time when the entire change
of system, which has taken place since 1846, was in full pro-
gress, and had already, to a great extent, been achieved.   We
think the following language, held by the Master of the Rolls,
in the case of the Dean of Ely *vs.* Bliss, applies here : " If two
inconsistent acts be passed at different times, the last is to be
obeyed, and if obedience cannot be observed without derogat-
ing from the first, it is the first which must give way.   Every
Act of Parliament must be considered with reference to the
state of the law subsisting when it came into operation, and
when it is to be applied ; it cannot otherwise be rationally con-
strued.   Every act is made, either for the purpose of making a
change in the law, or for the purpose of better declaring the
law."   So, also, the following dictum of Lord Denman, in the
case of Reg. *vs.* Inhabitants of St. Edmund's Salisbury : " While
we hold that a positive enactment is not to be restrained by
inference, we must also act on the maxim, *leges posteriores priores
contrarias abrogant,* whenever it comes in operation."   (See
Dwarris on Statutes, p. 531.)   Upon this ground, we must hold
that the first Joint Resolution, of November, 1846, has been
abrogated, and that the enumeration therein contained, of cer-

tain specific rights of the hoaaina, apart from his right to the land he cultivated, has been superseded by the specification of the same rights, contained in the seventh section of the Act of August, 1850, which specification reads as follows, viz : " When the landlords have taken allodial titles to their lands, the people on each of their lands shall not be deprived of the right to take firewood, house timber, aho cord, thatch, or ti leaf, from the land on which they live, for their own private use, should they need them, but they shall not have a right to take such articles to sell for profit. They shall also inform the landlord or his agent, and proceed with his consent. The people shall also have a right to drinking water, and running water, and the right of way."

That it was the intention of the Legislature to declare, in this enactment, *all* the specific rights of the hoaaina, (excepting fishing rights,) which should be held to prevail against the fee simple title of the konohiki, we have no doubt. We think this is conclusively shown by the fact that the Legislature, at its next session, in 1851, had its attention renewedly directed to this subject, on which occasion it revised and partially amended the section just quoted, by an Act which commences with the following preamble, viz : " Whereas, many difficulties and complaints have arisen from the bad feeling existing on account of the konohikis forbidding the tenants on the lands enjoying the benefits that have been by law given them : Therefore," etc. It was evidently the intention of the Legislature at the time of the passage of the Act of 1850, that the former right of the hoaaina to " pasture his horse and cow, and other annimals, on the land, but not in such numbers as to prevent the konohiki from pasturing his," should cease to exist. It was inconsistent with the new system, and was therefore not preserved on the change of the law. That such was the general understanding throughout the country, after the passage of the Act of 1850, clearly appears from the evidence given in this case ; and it is matter of history that during several subsequent sessions of the Legislature, petitions were presented for the enactment of a law granting to the common people the right of pasturage on the lands of the konohikis, but without success, on the ground that it would interfere with vested rights. We understand

the latest enumeration, by the Legislature, of the specific rights of the hoaaina, to be restrictive as against the rights of the konohiki and the Government, and we think, therefore, that the maxim *expressio unius est exclusio alterius* (Dwarris on Statutes, p. 605) must be held to apply in this case, with conclusive force ; and that, too, without any distinction as to whether the plaintiff is a kuleana holder, or otherwise ; our understanding of the term *people*, as used in the seventh section of the Act of 1850, being that it is synonymous with the term *tenants*, as used in the law relating to private fisheries, of which we expressed our view in the recent case of Haalelea *vs.* Montgomery.

Let judgment be entered for the defendant, with costs.

C. C. Harris, Esq., for plaintiff.

A. B. Bates, Esq., for defendant.