## SUPREME COURT—JULY TERM, 1875.

*Allen, Ch. J., Harris and Judd, J. J.*

KAHOOMANA (w.) *vs.* W. L. MOEHONUA, MINISTER OF THE INTERIOR,—JURY WAIVED.

THE statute of limitations of real actions does not run against the government.

Twenty years possession of land, for which no award of the Land Commission has issued, affords no presumption of a grant.

### OPINION BY JUDD, J.

This is an action of ejectment for the possession of the premises upon which the government buildings are situated, commonly called Mililani.

Kahoomana (w.) *v.* the Minister of the Interior.

The plaintiff claims title as follows : That previous to the year 1829, Manuia and his wife Kaupena, (both of whom were chiefs and retainers of Kamehameha II.) on coming from Hawaii to Oahu with the king, settled upon this lot, it being at that time unoccupied. In 1829 Manuia and Kaupena went with Boki on the sandalwood expedition, from which Kaupena returned, bringing the dead body of her husband, which she buried on this spot, and continued her residence upon it. In 1832 she married Huakini, they continuing to live on the premises. Kaupena died in 1856, leaving no heirs but her husband Huakini, who in 1858 married the plaintiff Kahoomana. Some years after this Huakini died, leaving a half brother, P. Nahaolelua and his widow the plaintiff, as his heirs. The plaintiff continued her residence upon this place until 1872, when she was dispossessed by Kamehameha V.

The plaintiff claims that her possession and that of her ancestors, thus traced, was continuous, notorious and peaceable, and undisturbed until 1872, and therefore she has acquired a title to these premises as against the government and as against third parties.

The defence claims that Namauu, who was the brother of Kaupena, lived continuously upon this lot from the time of the sandalwood expedition and claimed it as his own, and that he died in 1848, leaving this lot, as well as considerable other property, to the late M. Kekuanaoa, whose property is now inherited by Ruth Keelikolani, and who has conveyed all her rights in this property to the Hawaiian Government. The will of Namauu leaves all his property to Kekuanaoa, as we have said, but does not mention this lot specifically.

The plaintiff contends that Namauu was sent for, on the departure of Manuia and Kaupena on their foreign voyage, to come and live upon this lot and take charge of it as well as care for the family retainers, and that his occupation was under and by permission of Kaupena. It is in evidence that

in 1854, Kekuanaoa built a house upon this lot for his daughter, the late Princess Victoria Kamamalu, and that she and her guardian, the late John Ii, also resided upon this place. John Ii continued it as a residence after the majority and removal of his ward from the premises until his death, which occurred in 1870. The defence has put in evidence Royal Patents the No. 1089, to M. Kekuanaoa, and No. 5636, to the late king His Majesty Lunalilo, which together with the conveyance of the Oahu Charity School lot comprise the entire frontage of these premises, and the chain of title under these patents to the government is complete. As to the remaining and larger part of the lot, it is not covered by any award of the land commission, royal patent or deed from the king. We have detailed the history of the conflicting claims in this case because it was upon them that the evidence was offered, but we do not regard the evidence of possession of this lot previous to the organization of the Land Commission as evidence of title to land acquired anterior to that date, for the Land Commission was authorized to take evidence of the previous possession, among other elements of title, upon which to base grants to land : Vide page 109, vol. 1 of Statutes of 1846, "Section 7—The decisions of said board shall be in accordance with the principles established by the Civil Code of this kingdom in regard to prescription, occupancy, fixtures, native usages in regard to landed tenures, &c., &c.; which decisions being of a majority in number of said board, shall be only subject to appeal to the Supreme Court as prescribed in the Act to organize the judiciary, and when such appeal shall not have been taken they shall be final."

All claims to land accruing previous to December 10th, 1845, were required to be presented to the Land Commission for adjudication : Vide page 107, vol. 1, Statutes of 1846, "Section 1—His Majesty shall appoint through the Minister of the Interior and upon consultation with the Privy Council,

five commissioners, one of whom shall be the Attorney General of this kingdom, to be a board for the investigation and final ascertainment or rejection of all claims of private individuals whether natives or foreigners, to any landed property acquired anterior to the passage of this Act; the awards of which board, unless appealed from as hereinafter allowed, shall be binding upon the Minister of the Interior and the applicant."

This Act passed the Legislature the 10th day of December, 1845.

On the 9th of February, 1846, the commissioners were appointed, and on the 11th of February, 1846, they published the following notice :

" To all claimants of lands in the Hawaiian Islands : The undersigned have been appointed by His Majesty the King a Board of Commissioners to investigate and confirm or reject all claims to land arising previously to the 10th day of December, A. D. 1845, &c., &c., &c.

"All persons are required to file with the Board by depositing with its secretary specifications of their claims to land, and to adduce the evidence upon which they claim title to any land in the Hawaiian Islands, before the expiration of two years from this date; or in default of so doing, they will after that time be forever barred of all rights to recover the same in the courts of justice."

Section 8 of the Act of 1845, being Article 4 of the Board of Commissioners to quiet land titles, reads as follows :

"All claims to land, as against the Hawaiian Government, which are not presented to said Board within the time, at the place and in the manner prescribed in the notice required to be given in the fifth section of this article, shall be deemed to be invalid, and shall be forever barred in law, unless the claimants be absent from the kingdom, and have no representative therein."

In the principles adopted by the Board of Commissioners

to quiet land titles, in their adjudication of claims presented to them, it is laid down (page 93 of the 2d volume Statute of 1846), that "the titles of all lands, whether rightfully or wrongfully claimed, either by natives or foreigners, in the entire kingdom, which shall not have been presented to the Board of adjudication, confirmation or rejection, on or before the 14th day of February, 1848, are declared to belong to this government, by section 8th of the article creating this Board," &c.

These principles were made law by the following resolution of the Legislative Council:

"The principles adopted by the Board of Commissioners to quiet land titles under date of August 20th, 1846, having been read before the Nobles and Representatives of the people in Legislative Council assembled, and having been carefully considered, it was

"*Resolved*, That the same are hereby approved; and it is enacted that from the date hereof, all claims for landed property in this kingdom shall be tested by those principles, and according to them be confirmed or rejected.

                                        " KAMEHAMEHA.
" KEONI ANA.

" Council House, Honolulu, October 26th, 1846."

Neither Kaupena, Namauu, Kekuanaoa nor any person received an award for this lot, (excepting the portions comprised by the royal patents above mentioned) though the counsel for the plaintiff, after their case had closed, showed the Court a copy of an application for an award of this lot by Namauu.

The Land Commission, however, did not award it; and by the force and effect of the statutes above quoted, it must be considered to still belong to the government.

This is substantially the view taken by the Court in a former adjudication in regard to these same premises, in the suit of Kanaina *vs.* Long, (January term, 1872). It was there

decided that a building lot or town lot, as sometimes called, formed a new class of real property, not affected by the rules of the ordinary kuleanas, that is, that such a lot, if it escheats for want of heirs, escheats to the state and not to the lord of the ahupuaa, and upon a failure of title, the lot "might be recovered by the Hawaiian Government, but never by the lord of Waikahalulu." See Keelikolani vs. Robinson, 2 Haw. Rep., 548.

The theory of titles by prescription is, that the holding possession of an estate openly and adversely for a certain length of time, creates an inference that there was a grant from the adverse claimant or his ancestors or grantors, and the statute of limitations forbids the adverse claimant from setting up against this long continued possession, the fact that there was no grant.

But as against the government, a grant cannot be presumed or inferred from long possession, in view of the law which required claimants to land to present their claims to the Land Commission for confirmation or rejection.

As stated in the case of Kanaina vs. Long, this Board (the Land Commission) was a court of record, and here was the adjudication of which all parties in interest were obliged to take notice.

But it may be urged that the length of adverse possession since the closing of the Land Commission creates the inference of a grant. To this the answer is complete. There is no prescription against the state. *Quod nullum tempus occurrit regi.* "A state cannot be disseized." 2 Washburn, R. P., p. 525.

In Gibson vs. Chouteau, 13 Wallace, 92 (1871), Mr. Justice Field says: "It is a matter of common knowledge that statutes of limitation do not run against the state. That no laches can be imputed to the king, and that no time can bar his rights, was the maxim of the common law, and was founded on the principle of public policy, that as he was

occupied with the cares of government, he ought not to suffer from the negligence of his officers and servants. The principle is applicable to all governments, which must necessarily act through numerous agents, and is essential to a preservation of the interests and property of the public."

See also United States *vs.* Hoar, 2 Mason, 311. The People *vs.* Gilbert, 18 Johnson, 227. Stoughton et al. *vs.* Baker et al., 4 Mass., p. 528.

In Lindsey *vs.* Miller's Lessee, 6 Peters, 672, Mr. Justice McLean says : "It is a well settled principle, that the statute of limitations does not run against a state. If a contrary rule was sanctioned, it would only be necessary for intruders upon the public lands, to maintain their possession until the statute of limitations shall run; and then they would become invested with the title against the government, and all persons claiming under it. In this way, the public domain would soon be appropriated by adventurers. Indeed, it would be utterly impracticable, by the use of any power within the reach of the government, to prevent this result. It is only necessary, therefore, to state the case, in order to show the wisdom and propriety of the rule that the statute never operates against the government."

For the reason, therefore, that the mere possession of this lot by the plaintiff, and her ancestors makes no presumption of a grant as against the government, judgment must be rendered for the defendant.

A. Kalauli and J. K. Unauna for plaintiff.

The Attorney General for the defendant.

Honolulu, August 28th, 1875.