*P. Neumann,* for defendants.

---

## JAMES I. DOWSETT *v.* MAUKEALA, NAEA, KAUMA-EA, HINA, ELIKAI and KALUAHILO.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED OCTOBER 1, 1895.          DECIDED NOVEMBER 12, 1895.

JUDD, C.J., FREAR, J., AND J. A. MAGOON, ESQ., A MEMBER OF THE BAR, IN PLACE OF BICKERTON, J., ABSENT FROM ILLNESS.

A new trial will not be granted on the ground that a mixed jury was not drawn alternately, as directed by the statute, no objection having been taken to the method of drawing until after the jurors had been examined on their *voir dire* and accepted, and the party afterwards objecting to such drawing not having been prejudiced thereby.

Tenants were living on an ahupuaa of land by permission of the chief or konohiki, under the old tenure, previous to the Land Commission. Such possession is presumed to continue to be permissive after the award of title to the owner of the ahupuaa, unless acts are shown which would render the possession adverse.

The defendants contend that the record disclosed a joint judgment against them, whereas their occupation was separate.

Held, as the point did not come to the Appellate Court in the bill of exceptions, it cannot be considered.

OPINION OF THE COURT, BY JUDD, C.J.

For a statement of the plaintiff's title, see *Dowsett v. Maukeala et al.,* 9 Haw. 233. On the last trial of this case the Circuit Judge presiding charged the jury that the evidence

showed that the entry of the defendants or their ancestors was, a permissive one, they holding subject to the chief or konohiki, and that there was no evidence to establish their possession as adverse to the plaintiff, and the jury returned a verdict for plaintiff without leaving their seats. The case comes to us on a bill of exceptions. The first part of the bill is objectionable because not exhibiting in detail the various exceptions taken during the trial, but referring to them as to appear in the stenographer's notes when prepared. See our decision on such a bill of exceptions in *Kapuakela v. Iaea,* filed July 26, 1895 (page 99 *ante*), and in *De Fraga v. Portuguese Mutual Ben. Soc.,* filed October 18, 1895 (page 128 *ante*).

As this bill was allowed before a decieion of this court upon this question, we consider the only point raised in this connection. The case called for a mixed jury. The defendants' counsel claims that the trial court erred in not drawing the names of the Hawaiian and foreign jurors alternately from the box. The clerk's minutes do not agree in every respect with the notes of the stenographer. We account for this from the omission of the stenographer to note in the discussion between the court and the counsel for defendants, Mr. Rosa, all that transpired. The best conclusion we can come to is that the objection to the court's allowing the jury to be drawn as it was, that is, all the six Hawaiians first and then six foreigners, was not formally made until after they had been sworn on their *voir dire* and accepted. Without deciding whether the statute which prescribes that the mixed jury must be drawn alternately (Compiled Laws, p. 359) is mandatory or directory, we hold that the objection was waived by accepting the jury. Counsel, if he insisted upon the objection, should have moved that the jury be discharged and a new jury drawn. We cannot find that the method pursued by the court prejudiced the defendants in any way, and we overrule the exception on this point.

The Judge's charge is as follows:

"Gentlemen of the jury, this is the third trial of this case, the first trial being before Judge Whiting, for which a verdict

for the defendants was rendered. A new trial was granted by Judge Whiting and his order was sustained by the Supreme Court, and the decision of the Supreme Court in that case has now become the law in this case. The trial which took place before myself in November resulted in a disagreement; at that time the plaintiff asked for instructions which practically amounted to the statement of the law of the case as rendered by the Supreme Court, but for fear that there had been evidence different from the trial upon which the decision of the Supreme Court had been based, I declined to give the instructions asked for, and sent the case to the jury. After a more careful review of the evidence in the former cases, and strict attention to the evidence as given in this case, I am inclined to the opinion that my giving the case to the jury in the former trial was error under the instructions which I did give.

"The plaintiff in this case has shown you by a direct chain of paper title that he is the owner of this portion of the ahupuaa of Halawa; those documents are *prima facie* evidence of their contents, and would vest the title in the plaintiff subject to any adverse possession which the defendants might have shown you.

"Adverse possession is of two or three qualities; first, where a man goes into possession under a paper title with a claim of title; second, by oral agreement; third, as a mere usurper. Where the occupation has been with the permission of the owner of the land, in order that adverse possession may begin to run it is necessary that some direct notice be given to the owner that the occupier is holding hostile to himself.

"The statute of limitations which is the basis of adverse claims, is in the nature of a penalty, and is never enforced unless it is shown that the owners of the land have slept upon their rights for the period of twenty years.

"I feel compelled to instruct you as a matter of law that the evidence has shown that the entry of these persons or their ancestors was a permissive one; that they held subject to the chief or konohiki, and that there is no evidence to establish adverse possession in this case, the defendants having failed to

occupy the land notoriously and completely, continuously for the requisite period of twenty years adversely to the claim of the plaintiff."

The defendants claim that the court erred in relying upon the original permissive entry of the defendants' ancestors, such permissive entry ante-dating the award of the Land Commission under which the plaintiff claims. The argument is made that an adverse possession prior to an award of the Land Commission cannot be tacked on to adverse possession subsequent to that date in order to make out the full period of twenty years (*Kanaina v. Long*, 3 Haw. R. 332), so the adverse possession cannot be defeated by permissive acts or possession or entries ante-dating the award. In other words, the possession of a person living on land by permission of the chief before he obtained a paper title to the land cannot be considered in law as continuing to have this permissive nature.

We cannot agree with this contention. The Land Commission was a court and had full jurisdiction to settle all claims to land, whether by claimants of the larger divisions of land as divided in ancient times by name, or by the hoaainas or natives living on the lands under the chiefs. If the Land Commission expired and the hoaainas or native tenants neglected to present their claims for the parcels of the land which they desired, and for which they would ordinarily be awarded a kuleana title, showing merely their occupation of the same as a foundation for it, we think they must be considered as content with their prior status as tenants by permission of the land owner. Such tenancy would therefore, in law, be considered as continuing until some act of theirs changed their holding from the permissive nature to one of an adverse or hostile nature. The evidence shows that the defendants thought they had a right to the land because they had lived on it so long.

The legislation in behalf of the native tenants was extremely liberal. We call especial attention to an Act passed on the 6th August, 1850, where fee simple titles free of commutation were authorized to be granted to all native tenants or hoaainas

for the land occupied and improved by them, whether the same were portions of government lands or land held by the king or any chief or konohiki. House lots, not in Honolulu, Lahaina or Hilo, not exceeding one-quarter of an acre, were authorized to be granted, and the cultivated ground or kalo lands were limited to those actually cultivated by the applicant. In *Oni v. Meek*, 2 Haw. 87, this court held that the Act repealed the former legislation and the ancient tenure, but in the 7th section preserved to the people, whether hoaainas by ancient custom or kuleana holders, certain specific rights, as to take firewood, house timber, thatch, etc., for their own use. Judge Robertson says that this Act had for one of its purposes "the protecting the hoaainas in the enjoyment of certain rights therein enumerated as against the sweeping operation of the konohikis' allodial titles." In *Haalelea v. Montgomery*, Id. 62, the court held that the sale of a portion of an ahupuaa gave to the grantee as a tenant or hoaaina of the ahupuaa a common right of piscary in the fishing ground adjacent; and that in the meaning of the law regulating fisheries a tenant was any one occupying "*lawfully*" any portion of the ahupuaa.

The argument might be made that the grant of these specific rights, attached to all persons living on any ahupuaa, whether kuleana holders or not, was inconsistent with their holding as tenants at will of the land owner.

This use of the word "lawful" shows that the court did not intend to hold that any person living without right on the ahupuaa, whether a kuleana holder or not, had the specific rights granted to the people. To entitle a person to such rights he must be a "lawful" occupier; that is, have some title, whether by being the holder of a kuleana or having purchased a portion of the ahupuaa, as was the case before the court, or by some other lawful tenure. Now, if the hoaaina, so-called, without paper title by kuleana, remains on the land after his permissive occupancy has ceased either by notice to quit or by his own act of refusing to attorn, he cannot be considered as being a "lawful occupier" and entitled to the specific rights of the people

above set forth. It seems to us that these specific rights on an ahupuaa must be confined to those who have lawful right to reside there, whether upon kuleanas or by the will of the owner. To say that the old tenancy by will of the chief or konohiki became an adverse holding as soon as the chief or konohiki received his title to the land, and this without notice on the tenant's part that he held henceforth adversely, would give such person holding thereafter for twenty years, to all intents and purposes, as perfect a title to the land he held as if he had applied for and received a fee simple title therefor, and he thus be saved the expense of procuring such title. The law did not intend thus to favor those who slept upon their rights.

By the evidence the holding of these defendants became adverse in 1885 when they refused to pay rent. The statute began to run then. This suit interrupts it. We think the Judge's charge was right and was warranted by the evidence.

The last point to be considered is that the record discloses that a joint judgment has been obtained against defendants who lived separate and apart from each other upon the same ahupuaa not claiming jointly or as tenants in common; but each for himself on a distinct portion of the ahupuaa acquired by him, it may be of the same grantor, but at different times and under different circumstances.

This point, not having been raised at the trial below and not being certified to us in the bill of exceptions, we do not feel at liberty to consider.

We overrule the exceptions.

*C. Brown,* for plaintiff.

*W. A. Kinney,* for defendants.