# HAWAIIAN COMMERCIAL AND SUGAR COMPANY *v.* WAILUKU SUGAR COMPANY.

## MOTION FOR REHEARING.

SUBMITTED JULY 21, 1904.    DECIDED SEPTEMBER 13, 1904.

FREAR, C.J., AND CIRCUIT JUDGES ROBINSON AND MATTHEW-MAN IN PLACE OF HARTWELL AND HATCH, JJ.

WATER RIGHTS—*ancient, prescriptive, appurtenant.*

> Ancient water rights appurtenant to taro lands by reason of their use in connection with such lands, although such use was permissive before the issuance of Land Commission Awards, are often referred to as prescriptive rights, although the latter arise from adverse user; and they were intended to be included in "prescriptive rights" in the decisions in 9 Haw. 651 and 14 Haw. 50.

REHEARING—*denied.*

> A motion for a rehearing based on the ground that the court erred in holding that "prescriptive rights" were intended in those decisions to include all appurtenant rights and that it otherwise failed to follow those decisions, is denied—the contentions not being sustained by the decisions.

### OPINION OF THE COURT BY FREAR, C.J.

Fourteen grounds are set forth in the motion for a rehearing, but those that are relied on or that need be considered may be summed up in the proposition that the recent decision, reported in 15 Haw. 675, in respect of which a rehearing is sought, is in conflict with what has been referred to in this litigation as the *Lonoaea* decision, reported in 9 Haw. 675, as construed in the decision, reported in 14 Haw. 50, on the plea in bar in the present case. These last mentioned decisions are claimed to be con-

trolling—not merely as precedents on points of law, but as former adjudications respecting certain of the rights involved in this case. It is not contended that those decisions were overlooked by the court, for they are both referred to in the decision now called in question, but the contention is that the court failed to follow them on certain points in consequence of misconstruing or misunderstanding them. It is contended that certain rights were not adjudicated in the *Lonoaea* case and that that was so held in the decision on the plea in bar in this case, and that the court erred in its recent decision in holding that those rights were adjudicated in the *Lonoaea* case and in holding that they were held in the decision on the plea in bar to have been so adjudicated. A rehearing is desired in order that the claims in regard to these rights may be presented in argument to the court for adjudication now on the law and the evidence—the court not having gone into these questions as if they were still open questions, but having decided them on the theory that they were settled by the previous decisions. If they were settled by those decisions the court can not now grant the desired relief, however erroneous those decisions may have been. Counsel on both sides agree as to this, and of course we shall not go into the question whether those decisions were correct or not. We shall also pass by several preliminary questions that naturally suggest themselves as to the circumstances under which motions for rehearings should or should not be granted and will proceed at once to state wherein it is claimed that the court failed to follow the earlier decisions and why that contention can not be sustained.

Without going into details or stating exceptions or qualifications, it may be said generally that the court held in the *Lonoaea* case that the ancient right to a continuous flow of water in various auwais from the Wailuku stream had become converted by prescription into an alternate day and night right—this defendant sugar company to enjoy its prescriptive rights six days in the week and the taro planters their's seven nights in the week. In the decision on the plea in bar, it was held that the *Lonoaea* decision adjudicated the prescriptive rights but not the

rights to surplus water or to Sunday water, which was classed with surplus water, meaning by surplus water all that was not covered by prescriptive rights. In the recent decision the court held the same way, and that the defendant was not entitled to any surplus water, that the surplus water all belonged to the konohiki, but said that by prescriptive rights were meant all appurtenant rights, and limited those of the defendant, except those acquired since the *Lonoaea* decision, to six days in the week. No objection is made now to including in surplus water all freshet water in excess of what the cane and taro lands need or water that has heretofore run to waste. But it is contended that in the *Lonoaea* case and on the plea in bar the court meant by prescriptive rights only those that the defendant and the taro planters respectively had acquired adversely to each other, that is, the exclusive day and night rights respectively to the extent of their needs in time of scarcity, and that each continued to have the former continuous right to water in the time of the other, when there was any water to spare in such time, and that both continued to have their former rights in Sunday water, and that the court erred in its recent decision in holding that the exclusive day and night rights respectively covered all rights that were appurtenant to taro land—the defendant's rights being largely rights appurtenant to taro lands but transferred to and used on its cane lands. It is contended that the former rights appurtenant to taro lands are ancient and primary rights and not prescriptive rights; that they continue in so far as not changed by prescription; that there is an amount of water covered by those ancient rights over and above the strictly prescriptive rights before we reach surplus water, and that the court erred in classing these ancient rights with prescriptive rights and limiting them to the times allowed for prescriptive rights in the former decisions. Prescriptive rights, it is argued, are those acquired by adverse user, while the ancient rights were appurtenant to their respective lands as soon as the latter were awarded by the Commissioners to Quiet Land Titles, although they had

been permissive and not adverse theretofore.    See *Dowsett v. Maukeala,* 10 Haw. 166.

We may grant that the so-called ancient rights are not prescriptive rights, but this does not settle the question.  The question is, what did the court mean by prescriptive rights in the former decisions ?   If it meant to include all ancient or all appurtenant rights or if it was of the opinion that all such rights had become converted to or merged in prescriptive rights, the construction put upon those decisions in the recent decision was correct, however inexact the language may have been in the former decisions.   It may be said of those decisions that they were their own dictionaries much as was said of a grant in *Damon v. Hawaii,* 194 U. S. 154, as follows:  "When the description of land granted says that there is incident to it a definite right of fishery, it does not matter whether the statement is technically accurate or not; it is enough that the grant is its own dictionary and explains that it means by 'land' in the habendum, land and fishery as well."

The passage in the recent decision that is most in point and perhaps most complained of as to the meaning placed upon "prescriptive rights," is the following:   "Water covered by prescriptive rights.   As to this, the judgment in the *Lonoaea* case is a complete adjudication.   As already decided on the plea in bar, the rights in the surplus water were not adjudicated.   In our opinion, *all* of the respondent's prescriptive rights were adjudicated, including in the term prescriptive as here used the rights appurtenant to taro land.   The right of taro lands to water has generally, if not always, been regarded and referred to by our courts as well as by parties as a prescriptive right acquired against the konohiki in the manner in which such rights can be acquired.   In the decision on the plea in bar the term was so used."

In this passage the court recognized the possible inaccuracy in the use of the words "prescriptive rights" as covering ancient rights appurtenant to taro lands, and so, in order to avoid misunderstanding, made its own definition for the purposes of that

decision by expressly stating that it included "in the term prescriptive as here used the rights appurtenant to taro land." It stated also, apparently by way of partial justification for that use of those words, that "the right of taro lands to water has generally, if not always, been regarded and referred to by our courts as well as by parties as a prescriptive right acquired against the konohiki in the manner in which such rights can be acquired." Counsel for the defendant contend that such rights are not prescriptive, but, conceding that they are not, it is nevertheless true that they have often been treated as if they were. For instance, in the first reported case in regard to the rights in this very water, *Peck v. Bailey,* 8 Haw. 658, decided in 1867, when the ancient rights had not to the same extent as now lost their identity or become so generally merged in or confused with prescriptive rights, the immemorial or ancient or appurtenant rights were spoken of as prescriptive rights (see p. 672), and in the later (1891) case of *Kahookiekie v. Keanini,* reported in the same volume, p. 310, such rights were referred to as "acquired * * * by prescription." Such application of the word "prescriptive" may have been due in part to the fact that there is little or no difference between these two classes of rights for practical purposes, that it is often impossible at this late date to say from the evidence where one class ends or the other begins, that they are both appurtenant rights by reason of their use in connection with the land, and that although the user is adverse in the one case and was originally permissive in the other, yet in the latter it was treated as if it had been adverse or as if a title had been acquired to the water rights as well as to the land for the purpose of a Land Commission Award. The occupation of the land itself was permissive in the same way prior to the awards and yet had already come to be regarded as more or less a right, subject to forfeiture only for cause.

The court further stated in the passage referred to that "in the decision on the plea in bar the term was so used." This is an adjudication—a construction of that decision by the same Justices who rendered it. The court did not take the position

now complained of through inadvertence or oversight. It considered the two former decisions and not only stated that "prescriptive" was used in this sense in its own decision on the plea in bar but also held in this same passage that the *Lonoaea* decision covered all prescriptive rights, using that term in this sense.

But was the term "prescriptive" in fact used in the alleged restricted sense in the former decisions? In the *Lonoaea* decision, p. 661, the court referred to "kalo land which had acquired water rights by prescription" in such a way as to show that it meant to include the ancient rights. On page 664, in comparing the quantity of water under the ancient right with that under the right as changed by prescription to an alternate day and night right, it referred to the kalo land as land "which has acquired right to water by prescription"—meaning before the change to the day and night right. Lastly in its final judgment, p. 665, it held that the taro planters were entitled during the seven nights in the week to "such amounts of water as they have acquired by prescription for their various lands," and that the defendant was entitled during six days in the week to "the water for its present estate from these auwais." Here all appurtenant rights must have been included. The decision was that the right which had been acquired previously had become changed as to the time of user—not that some of those rights had become so changed or that a new right to an additional quantity of water had been acquired. It was that the continuous right had become changed to an alternate day and night right, not to a right in part continuous and in part alternate. The material change was in the time of user, not in the quantity of water. The decision was not that a right to a certain quantity of water during certain hours had been acquired, but that a right to a certain quantity continuously had been changed to a right to that quantity alternately. The alternate right was not a right acquired as to quantity by adverse user. If that were so, the former right to the former quantity would remain, unless lost by abandonment, which was not the case, and there would be rights to twice the water in the stream, which would be absurd. The old rights

as to quantity remained substantially the same, and the new right consisted merely in the change of time. The one was a substitution for, or a change in, not an addition to, the other. If that judgment related only to the rights as changed by prescription as distinguished from all ancient appurtenant rights, assuming that those two classes were not coextensive or that one had not been converted into the other or that the ancient exceeded the prescriptive, it would be absurd and nonsensical and vain repetition, a mere begging of the question, for it would mean that the taro planters were adjudged to be entitled by prescription during the night to such amounts of water as they had become entitled to by prescription during the night, and similarly as to the defendant, *mutatis mutandis*. But if the court meant all appurtenant rights, the judgment would be sensible, for it would mean that the taro planters had become entitled by prescription during the night to the amount of water to which they had previously been entitled continuously, and similarly as to this defendant by day. The judgment covered all appurtenant rights acquired by the taro planters "for their various lands" and by the defendant "for its present estate," not for some of those lands or in part for those lands. Other passages in the *Lonoaea* decision pointing in the same direction need not be referred to.

The decision on the plea in bar is likewise full of indications that the court intended to include in prescriptive rights all appurtenant rights and that it considered that in the *Lonoaea* case the question was whether the ancient rights, that is, all of them, had become changed from continuous to alternate rights, that is, changed merely as to their mode of user, but we need not cite passages to show this in the same way as we have done in the case of the *Lonoaea* decision. We will confine ourselves to another line of argument. That decision—on the plea in bar —divided all the water into two classes—surplus and prescriptive. It defined, on page 61, "surplus water" as all water "that was not covered by prescriptive rights." Therefore, if there were any ancient rights that were not strictly prescriptive

rights, they must have been intended to be included in either rights to surplus water or prescriptive rights. It would be ridiculous to include definite appurtenant rights, arising from user, in rights to surplus water; and all three decisions, all of which divide the water into prescriptive and surplus, go to show that the inclusion of appurtenant rights in rights to surplus water has in no case been intended. The only reasonable view is that the court intended to include in prescriptive rights all definite appurtenant rights, and especially as that has been usual in the past, as above pointed out. And on pages 63-64, the court in passing from a consideration of prescriptive rights to a consideration of rights to surplus water, used various expressions to denote definite appurtenant rights and contrasted all such rights with rights to surplus water. It says: "The question further arises, however, whether the court did not decide elsewhere in the opinion, not indeed that the day or the night right or the prescriptive rights or any absolute or exclusive right to any particular quantity or for any particular time covered the surplus water, but that all parties had a right to a reasonable proportion of the surplus water." Reference has been made already to the statement in the recent decision that in the decision on the plea in bar appurtnant rights were intended to be included in prescriptive rights.

But it is contended that the court in its recent decision erred, not merely in holding that the previous decisions went farther than they did, in so far as it held that all appurtenant rights had been included in prescriptive rights and that there were no appurtenant rights over and above prescriptive rights unadjudicated by the previous decisions, but also in overlooking the fact that it had been expressly held, as contended, in the decision on the plea in bar, that surplus and Sunday water had not been adjudicated in the *Lonoaea* case. The passage in the decision on the plea in bar relied on in support of the latter contention reads as follows, p. 68: "It is not *res adjudicata* that the defendant is entitled by prescription, subject to the above mentioned exceptions, to all the water, however much there might be,

in the stream during the times above mentioned, or that the defendant is entitled to a proportional share or any share of the surplus or Sunday water, or that it is not so entitled."

It is not disputed that Sunday water has been classed as surplus water in all three decisions. No distinction can now be made between these. The passage just quoted states in plain language precisely what the court held and it is not in conflict with the recent decision. The defendant contended on the plea in bar that the *Lonoaea* decision awarded to it under its prescriptive rights all the water in the stream during the day and a reasonable proportion of the surplus and Sunday water, but the court held, as it stated in the passage above quoted, that the *Lonoaea* decision was not *res judicata* that the defendant was entitled to all the day water by prescription, and that it was not *res judicata* whether it was entitled or not to a proportional or any share of the surplus or Sunday water. The court in its recent decision proceeded consistently with this, taking the view that the *Lonoaea* decision adjudicated only all prescriptive rights and not at all the surplus or Sunday water. To hold that there has been no adjudication as to whether the defendant is entitled or not in some way to any of the surplus or Sunday water is not inconsistent with the view that it has been adjudicated that the defendant has no definite prescriptive or ancient or appurtenant right to such water. All appurtenant rights, whether prescriptive or ancient, have usually or at least frequently, been adjudicated as to particular lands, without any adjudication as to whether any surplus water could be taken under a right of some kind for such lands. The words "by prescription" found in the statement of the first proposition in the passage last above quoted were not intended to go with the second proposition also. To imply them in the latter would make that proposition have a very different meaning from what was evidently intended, if not an absurd meaning; it would be inharmonious with the construction of the sentence, especially in view of the repetition of the words "that the defendant is entitled" and the omission of the words "by prescription" in the second proposition; it

would also make this passage, which is part of a summary of the opinion, inconsistent with the body of the opinion which it purports to summarize. In the first proposition the court summarized what it had stated in regard to prescriptive rights on pages 61-63; in the second proposition, what it had stated in regard to surplus and Sunday water on pages 64-66. Compare the passages in question with the passage above quoted from page 63, where the court contrasts the two classes of rights in passing from a consideration of one to a consideration of the other. Apart from the above reasoning, if the court included ancient rights in prescriptive rights, as in our opinion it did, there could of course be no such rights to the surplus or Sunday water, for the latter was defined as including only what was not covered by prescriptive rights. In its recent decision the court proceeded on the view that the question whether the defendant had a right to any of the surplus or Sunday water was unadjudicated. It expressly stated, in the passage first above quoted from the recent decision, that "as already decided on the plea in bar, the rights of the surplus water were not adjudicated." It discussed the question and held irrespective of the previous decisions, that the defendant did not have a right to any of that water.

The question whether a rehearing should be granted on the further ground that the court failed to credit the defendant with Sunday water as well as night water in respect of lands purchased from taro planters since the *Lonoaea* decision, is disposed of by the foregoing reasoning.

The motion for a rehearing is denied.

*W. O. Smith* and *Castle & Withington* for the plaintiff.

*Kinney, McClanahan & Cooper* and *Ballou & Marx* for the defendant.

CONCURRING OPINION OF CIRCUIT JUDGE ROBINSON.

As, in my judgment, this court, in its decision of the case at bar (15 Haw. 675) not only did not overlook any, but, without exception, fully considered all of the many points raised by

counsel for respondent in its petition for rehearing, I concur in. the order denying respondent's motion for rehearing. I also. concur in what is contained in the opinion of the Chief Justice in reference to the meaning and scope of the term "prescriptive rights," as used and employed in both the *Lonoaea* and "plea in bar" decisions.