E. F. BISHOP, ET AL. *v.* GEORGE KALUA, ET AL.

No. 2401.

TERRITORY OF HAWAII *v.* GEORGE KALUA, ET AL.

No. 2402.

SUBMITTED JUNE 9, 1942.                    DECIDED JUNE 25, 1942.

PETERS AND LE BARON, JJ., AND CIRCUIT JUDGE
BUCK IN PLACE OF KEMP, C. J.,
· DISQUALIFIED.

OPINION OF THE COURT BY PETERS, J.

These are actions of ejectment. They were consolidated for trial in the circuit court and by stipulation were submitted together in this court. The issues are the same in both cases and one opinion will suffice.

The parcels of land involved adjoin and are included within the boundaries of the ili of Puahia situated at Manoa, Honolulu.

By the Mahele of March 8, 1848, approved by the legislature of the kingdom of Hawaii on June 7 following, the

ili aina of Puahia was reserved by Kamehameha III to himself as crown land.

Plaintiffs claim that the premises in dispute were unassigned public lands, *i.e.,* that no award, grant, royal patent, land patent or deed affecting Puahia, as currently known, appeared of record, except Royal Patent Grant 74 to Puoa dated February 3, 1848 of 2½ acres (other land within Puahia); and L. P. (Grant) 9827 dated March 11, 1930 to the trustees of the Bishop Estate granting to them the premises subject to the action in which they are plaintiffs.

Defendants claimed title under a lost, unrecorded deed of gift from Kamehameha III to their mesne predecessor in title, Paia Puukai, allegedly executed by the King sometime between the years 1850 and 1854, *i.e.,* after Puahia became crown land and prior to the King's death.

Upon the trial, plaintiffs made out a *prima facie* case. Provision had been made for the registration of public lands belonging to Kamehameha III and of the Hawaiian government[1] and statutes requiring the recordation of all official documents affecting the same existed as early as April 27, 1846.[2] The Organic Act transferred the custody of these records to the commissioner of public lands.[3] The present bureau of conveyances was established at the same time.[4] The defendants relied for proof of the execution of the alleged lost, unrecorded deed upon the presumption

[1] Mahele Book; Resolution of Privy Council dated December 14, 1847 (Privy Council Records, vol. 4, p. 284).

[2] Act of April 27, 1846 (Second Act of Kamehameha III, pt. I, c. VII, § I; art. II, §§ I, V, XII, XIII; art. IV, §§ VI, XI) (L. 1846, p. 107, R. L. H. 1925, app. p. 2120); Act of October 26, 1846 (L. 1847, p. 81, R. L. H. 1925, app. p. 2124); Act of June 7, 1848 (L. 1848, p. 22, R. L. H. 1925, app. p. 2152); Act of July 20, 1854, Civ. Code 1859, p. 415.

[3] Organic Act, Act of Congress of April 30, 1900; 31 Stat. L. 141, c. 339, §§ 7, 8, 73, 91, 99.

[4] Act of April 27, 1846 (Second Act of Kamehameha III, pt. V, tit. II, c. II).

166

arising from long, continued, uninterrupted possession by themselves and their predecessors in interest continuously since the year 1826, the date of birth of the grantee, accompanied by the usual acts of ownership. It seems to be conceded that the defendants are the ultimate assignees in interest of whatever title was vested in the grantee Paia Puukai.

Evidence was also offered by the defendants tending to show the physical existence in November, 1879 of the lost, unrecorded deed under which they claimed. Its contents, however, were not identified further than by the name and signature of the grantor, the statement that it was without consideration, and the presence of the great seal of the kingdom. Obviously this evidence was merely corroborative of the presumption of a lost grant. If the execution of the deed were established and it were in due form, nothing further would be required than proof of its contents. There would be no occasion for the exercise of any presumption on the subject.

Verdict was for the defendants in each case and judgments were entered accordingly.

Of the errors respectively assigned, but one common to both need be considered, *viz.*, the refusal of the trial court to grant plaintiffs' motions for a directed verdict. After both sides had rested the plaintiffs made motions for directed verdicts including, among other grounds, the following: (a) That there was no evidence or not a scintilla of evidence which would give rise to the presumption of a grant from the sovereign power of the Hawaiian Kingdom to defendants or their predecessors and/or from the sovereign having lawful power and jurisdiction in and of the Hawaiian Islands; (b) that no evidence had been introduced to show that the defendants have any title to the lands described in the complaints; (c) that the defendants have failed to prove that the plaintiffs or their

predecessors conveyed the property involved by deed or grant which deed or grant is now lost or for other reasons cannot be produced; (d) that the evidence conclusively shows by the proper records that the title in fee simple to said property has been in the Territory of Hawaii and its predecessors in title continuously from the Mahele of 1848 to March 11, 1930; (e) that no evidence has been introduced in these cases showing the execution of a grant.

The motions should have been granted. The evidence of the contents of the alleged unrecorded deed, such as it was, together with historical facts of which this court may take notice, limits the origin of possession giving rise to a presumption of a grant to the period when the premises involved were crown lands, *i.e.,* within the period between the Great Mahele of March 8, 1848[5] and the King's death on December 15, 1854. The form of the great seal of the kingdom of Hawaii was not adopted until June 27, 1846.[6] And it was not until Puahia became crown lands that it was freed from the statutory regulation requiring a consideration upon the disposition of public lands of the kingdom.[7] Hence, the origin of the possession giving rise to the presumption of the lost grant is limited to the brief period of six years within the dates indicated.

There is no question but what the defendants made out a case of long, continued, undisturbed possession by themselves and their predecessors in interest accompanied by acts of ownership.[8] But the possession of Paia Puukai had its origin in the year 1826 when possession of land in

---

5 R. L. H. 1925, app. p. 2152, cited *supra* note 2.

6 See *The Polynesian* edition of June 27, 1846.

7 Act of April 27, 1846 (Second Act of Kamehameha III, pt. I, c. VII, art. II, §§ I, XIII, p. 99, *et seq.*), cited *supra* note 2.

8 In fact they not alone showed that Paia Puukai had lived all his life upon the premises in dispute, but that his father before him had also been an occupant living there up to the time of his death.

the kingdom of Hawaii by private persons was purely permissive.[9]

In the meantime the board of commissioners to quiet land titles came into existence.[10]   Under the provisions of the law of its creation all private persons claiming any interest in lands of the kingdom occupied by them and which arose prior to its passage were privileged to present their claims to the board and have their titles quieted and awards issued to them consistently therewith.   Nothing, however, was done by Paia Puukai to establish any claim to the premises occupied by him and it is undisputed that up to the time within which claims might have been presented, *i.e.,* February 14, 1848, no claim to any interest in the premises in dispute had been filed by Paia Puukai or by anyone on his behalf.   No claim to or award of the premises in dispute is of record.

Nor was the character of the occupancy, initiated prior to December 10, 1845, changed by the provisions of the Act creating the board of land commissioners except as the occupant might fail within the time limitation of the Act to make claim to the land occupied by him.   While the Act provided that all claims for land as against the Hawaiian Kingdom which were not presented to the commission within the time and in the place and in the manner prescribed should be deemed to be invalid and should be forever barred, nothing is contained in the Act interfering with the claimants' right of possession pending the expiration of the time limitation.   Occupancy during the period within which claimants might present their claims

9 *L. Keelikolani* v. *James Robinson,* 2 Haw. 436; *Kahoomana* v. *Minister of Interior,* 3 Haw. 635, 640; *Thurston* vs. *Bishop,* 7 Haw. 421, 431; *Bishop* vs. *Kala,* 7 Haw. 590; *Dowsett* v. *Maukeala,* 10 Haw. 166; Principles of the Land Commission.

10 Act of December 10, 1845 (L. 1846, vol. 1, p. 107) (R. L. H. 1925, app. p. 2120).

in the absence of any provisions to the contrary was unquestionably equally permissive. Hence, whatever the character of the estate vested in Paia Puukai prior to December 10, 1845, possession thereunder was purely permissive and so continued thereafter until February 14, 1848, the expiration date for filing claims.

The period from February 14, 1848 to March 8, 1848, when, upon the latter date, the premises in dispute as a part of the ili of Puahia became crown land, may be dismissed without comment further than would equally apply to the succeeding period terminating upon the death of the King.

Defendants in error concede that the alleged unrecorded deed under which they claim was not made until the year 1850. This concession is based upon the assumption that the death of Paia Nui, the father of Paia Puukai, was the occasion for its execution. There is no evidence, however, that between March 8, 1848 and December 20, 1854 the permissive character of the possession of the premises in dispute by Paia Puukai changed in any particular whatsoever. As far as the record discloses there is no indication of any change in its permissive character until November, 1879, when he claimed to be the owner. At no time prior to Kamehameha's death was there any change from the permissive occupancy that previously existed and in the absence of evidence to the contrary it will be presumed that its former permissive character still continued and was not hostile to the true owner.[11] The same observation applies to the period succeeding the death of Kamehameha III up to 1865 when crown lands

11 *Dowsett* v. *Maukeala*, 10 Haw. 166, cited *supra* note 9; *Koloa Sugar Co.* v. *Brown*, 12 Haw. 142; *Smith* v. *Laamea*, 29 Haw. 750; *Peabody* v. *United States*, 175 U. S. 546, 550.

170

became inalienable[12] and adverse possession legally impossible.[13]

No claim was made that the possession upon which the defendants predicated the presumption of a grant legally conferred prescriptive title.

Consistently with the views herein expressed the judgments appealed from are reversed and the causes remanded for entry of judgment in each case in favor of plaintiffs.

*J. V. Hodgson*, Attorney General (R. V. Lewis, Deputy Attorney General, with him on the briefs), for plaintiffs in error and plaintiff in error.

*Cass & Silver* for defendants in error.

---

12 L. 864, p. 69, R. L. H. 1925, app. p. 2177.

13 *Galt* v. *Waianuhea*, 16 Haw. 652; *Territory* v. *Kapiolani Est.*, 18 Haw. 640; *Territory* v. *Puahi*, 18 Haw. 649; *Carter* v. *Territory*, 24 Haw. 47.