## SUPREME COURT—IN BANCO.

### JANUARY TERM—1858.

#### LEVI HAALELEA *vs.* DANIEL MONTGOMERY.

By the Laws of 1839, as subsequently amended by the organic acts of 1846, the entire fishing ground, lying between low water mark and the outer edge of the coral reef, or *kuanalu*, along the seaward front of an *ahupuaa* of land, is the private property of the landlord or konohiki, subject always to certain piscatorial rights of the tenants or *hoaainas*.

The defendant's brother having received from the konohiki a conveyance of a portion of land of the *ahupuaa* of Honouliuli, by metes and bounds, but not including any portion of the fishing ground adjacent; it was held, that he acquired a common right of piscary as a tenant or occupant of the ahupuaa, appurtenant to the land purchased, and subject always to the rights of the grantor.

It would not have been in the power of the landlord to grant an exclusive right of fishery in the fishing ground, adjoining the land in question, and it

Levi Haalelea *v.* Daniel Montgomery.

was *doubtful* whether said landlord could convey her special rights therein, so as to divide the fishery into two or more parts, without infringing on the rights of tenants.

Where the exact legal signification of the terms of a deed could not be expressed in Hawaiian without great difficulty, recourse was had to the English original.

JUSTICE ROBERTSON delivered the decision of the Court as follows :

The plaintiff brings his action for the purpose of determining certain rights of fishery, now in dispute between him and the defendant, and also to recover damages from the defendant for having prohibited and prevented the plaintiff and his people, and others occupying certain lands under him, from taking fish on the fishing ground lying to seaward of defendant's land, at Puuloa, on·this island.

It appears, from the evidence presented to the Court, that the land now held by the defendant, is a portion of the large ahupuaa of "Honouliuli," and was purchased, in the year 1849, by defendant's brother, Isaac Montgomery, from the late high chief, M. Kekauonohi, then a widow, who died in the year 1851, leaving the land of "Honouliuli," together with other property by will, to her second husband, the plaintiff in this action. The conveyance from M. Kekauonohi to Isaac Montgomery, was executed in the Hawaiian and English languages, and reads as follows in English :

## " WARRANTY DEED.

" Know all men, by these presents, that I, Kekauonohi, of Honolulu, Island of Oahu, for and in consideration of the sum of eleven thousand dollars, to me this day paid in hand by Isaac Montgomery, also of Honolulu, Island of Oahu, the receipt of which is hereby acknowledged, do grant, bargain, sell, and by these presents convey unto him, the said Isaac Montgomery, and to his heirs, executors, administrators and assigns, for ever, all that certain lot of land, situated in the Island of Oahu. aforesaid, and described as follows : Commencing at mauka north corner or point of this land at place called Lae Kekaa, at bend of Pearl River, and running along edge of Pearl River, makai side, taking in three fish ponds called Pamoku, Okiokilipi and Paakule to open sea, thence following

along the edge of the sea (reserving all the reef in front) to end of stone wall by sea, in land called Kupaka, at the makai west corner of this land, thence running north 25 ° E. 283, direct to place of commencement, including an area of acres 2,244 as per plot hereto annexed.

" To have and to hold, the above conveyed premises and all the tenements and hereditaments situate thereon, with this my covenant and warranty and lawful seizers, unto the said Isaac Montgomery, his heirs, executors and administrators and assigns for ever.

" In witness whereof, the said party, Kekauonohi, has hereunto set her hand and seal at Honolulu, this 7th day of September, A. D. 1849.

" M. KEKAUONOHI.   [L. S.]

" Executed in the presence of Frank Manini."

It is admitted that defendant is now the owner of the property, originally conveyed to his brother by the foregoing deed. The Court also understood the defendant to admit that he had prohibited the plaintiff and his people from taking fish on the place in controversy. And it is admitted by the plaintiff that, from and after the execution of the deed by M. Kekauonohi, she withdrew her *Luna* from Puuloa, and ceased to take or taboo any fish on the reef opposite defendant's land, up to the time of her death, and that, until recently, Haalelea never asserted any right or claim to take fish on said reef.

Upon this state of facts, the defendant claims to have, under a proper construction of the conveyance before recited, and the statutes of this Kingdom, an exclusive right of piscary, in the fishing ground lying opposite the land embraced in the deed ; and the plaintiff on his part, claims the same exclusive right for himself and his tenants living on " Honouliuli," as against the defendant and all others living on the land covered by the conveyance, or in other words, that the defendant did not acquire by his purchase, a right to take fish anywhere outside of the boundaries of the land conveyed to him, and that the people living on that land after the date of the deed, ceased to be tenants of the Ahupuaa of " Honouliuli," and so lost their rights to piscary, under the laws of the land.

In order to a right decision of this controversy it would seem

Levi Haalelea *v.* Daniel Montgomery.

to be necessary in the first place, to ascertain and define what were the rights of piscary possessed by M. Kekauonohi, as Konohiki of the Ahupuaa of "Honouliuli," at the time she made the conveyance to Isaac Montgomery. To do this it is unnecessary to inquire what were the respective rights of piscary enjoyed by the Konohiki and the common people, in ancient times, because since the year 1839 those rights have been regulated and defined by written laws.

At page thirty-six of the English version of the old laws, will be found an enactment on this subject, which commences in the following words : "His Majesty the King, hereby takes the fishing grounds from those who now possess them, from Hawaii to Kauai, and gives one portion of them to the common people, another portion to the landlords, and a portion he reserves to · himself.

These are the fishing grounds which His Majesty the King takes and gives to the people : the fishing grounds without the coral reef, viz : the Kilohee grounds, the Luhee ground, the Malolo ground, together with the ocean beyond.

But the fishing grounds from the coral reefs to the sea beach are for the landlords, and for the tenants of their several lands, but not for others."

This is the point at which the existing piscatory regulations of the Kingdom had their commencement, and since which, ancient custom ceased to govern the subject. His Majesty Kamehameha III., as supreme lord of the islands, and having in himself the *allodium* of all the lands in the Kingdom, did at that time, with the concurrence of the Chiefs, resume the possession of all the fishing grounds within his dominions, for the purpose of making a new distribution thereof, and of regulating the respective rights of all parties interested therein, according to written laws.

The fishing rights of both the Konohikis and the hoaainas were defined and regulated by the law of 1839, which was at different times amended in some particulars, until the passage of the organic Acts in 1846, when those rights were again defined by article 5th, of chapter 6th, part first, of the Act to organize the Executive Departments. (See 1st Vol. Stat. Laws, pp. 90 to 92, secs. 1 to 7.) The part of the law to which it is

Vol. II.        9

necessary to have reference more particularly in the present case, reads as follows :

" Section 2. The fishing grounds from the reefs, and where there happen to be no reefs from the distance of one geographical mile from the beach at low water mark, shall in law be considered the private property of the landlords whose lands, by ancient regulation, belong to the same; in the possession of which private fisheries, the said landlords shall not be molested except to the extent of the reservations and prohibitions hereinafter set forth.

" Section 3. The landholders shall be considered in law to hold said private fisheries for the equal use of themselves and of the tenants on their respective lands ; and the tenants shall be at liberty to use the fisheries of the landlords, subject to the restrictions in this article imposed."

The four succeeding sections of this law, which we deem it unnecessary to cite at length, define and guard the rights of the konohikis, in relation to their reserved or tabooed fish, and contain certain provisions to protect the rights of the tenants or *hoaainas*, from unjust restrictions and exactions.

Under this statute, as we understand it, the entire fishing ground, lying between low water mark and the outer edge of the coral reef, (or Kuanalu, as it is called in the Hawaiian version) along the seaward front of the Ahupuaa of " Honouliuli," was the private property of M. Kekauonohi, possessed and held by her as such, subject to the piscatorial rights of the tenants living on that Ahapuaa.   On this ground she had a common right of piscary with the tenants of " Honouliuli," or she was at liberty, if she saw fit, to taboo or set apart annually, one particular species of fish for her own private benefit, as provided in section 4th, or in lieu of this, she might on consultation with the tenants, as provided in section 7th, make an arrangement whereby she would be entitled to receive one-third part of all the fish caught on the ground.

Such were the rights of M. Kekauonohi in the premises at the time when she executed the deed to Isaac Montgomery, and the next question is, what portion, if any, of those rights did she thereby convey to him, or did he, by operation of law, acquire any rights of piscary on the ground in question, upon receiving that conveyance ?

It is contended, on the part of the defendant, that by a fair construction of the descriptive part of the deed, it must be held to extend to deep water at the outer edge of the reef, thereby including all that part of the Konohiki's fishing ground lying opposite to the land conveyed to Isaac Montgomery. It is said that the expression, " to open sea," must be understood to mean, " to deep water outside of the reef," in contradistinction to the shallow water upon the reef, between the breakers and low water mark, and that the expression, " following along *edge of sea*," means following along the edge of *deep water*, outside of the reef. If this is correct, then unquestionably, the grantor conveyed away all her right and title to the fishing grounds, as well as to the dry land. But it seems very clear that this construction cannot stand without falsifying the obvious meaning of the descriptive language which follows. For if " open sea " means the deep water outside of the reef, and " edge of the sea " means the edge of such deep water, the stone wall which is described as being *by sea*, in land called Kupaka, must have extended out to the seaward edge of the reef, a proposition which has not been asserted in argument, and which, on reference to the plan annexed to the deed, appears to be conclusively negatived. So the expression " reserving all the reef in front," would seem to be inconsistent with the idea that the line ran along the outer edge of the reef, for in that case there would be no reef *in front* of the line. That the line ran along the inside of the coral reef, seems to us clear from the language used in the Hawaiian version of the deed, which reads as follows : " Aole nae e hookomo ana i ka papa koa mawaho." We should translate this expression, *not including, however, the coral reef outside.* Again, the last line of the survey is described as running from the end of the stone wall, north 25 ° east, by compass, 283 chains, to the place of commencement, and it is not pretended that this line extended out to the outer edge of the reef. If such is the case, it is a fact that could be readily ascertained by measurement. But the surveyor's plan clearly indicates the reverse. It is very evident, then, that no part of the fishing ground is included within the surveyed metes and bounds of the property conveyed to Isaac Montgomery.

But, it is argued by defendant's counsel, that M. Kekauonohi's right of piscary in the fishing ground in question, passed to Montgomery as an appurtenance to the land, by virtue of the clause which, in the Hawaiian version of the deed, reads thus : " A me na mea paa a pau e waiho ana maluna iho, a me na mea e pili pono ana," and in the English version, thus : " And all the tenements and hereditaments situate thereon." It is said that the words, " a me na mea e pili pono ana," are sufficiently broad in their signification to carry everything appurtenant to the land embraced in the conveyance, and that the Court ought to regard the Hawaiian version of the deed as controlling, wherever their appears a difference between that and the English, for two reasons : First—Because the grantor herself was a native, and a person of intelligence, and must, therefore, be presumed to have intended to convey whatever would pass under the words of the deed, as expressed in her own language ; and, secondly, because the Court has decided in several previous cases that, in construing the statutes of the Kingdom, which are enacted in both languages, wherever an irreconcilable difference exists between the two versions, the Hawaiian must govern. On the other hand, it is argued that the grantee, who is an Englishman, received the deed in both languages, thus accepting the English version as the exact counterpart of the Hawaiian ; and that, therefore, he and those claiming under him, should be bound by the English version ; that the deed in both versions forms but one instrument, and that if the language of the one is altogether inconsistent with that of the other, which, however, is not conceded, the proper course would be to declare the instrument void for uncertainty.

This involves a question of considerable magnitude, the decision of which may affect the rights and interests of many individuals throughout the Kingdom. After careful reflection upon the point, we are of the opinion that it would be both unsafe and unreasonable, for the Court to hold that the Hawaiian, and not the English version, should control in this instance, if the difference contended for by the defendant does really exist, which, we think, is not clear. It is true this Court has repeatedly ruled, as stated by the defendant, that, in the case of an irreconcilable difference between the Hawaiian and

Levi Haalelea *v.* Daniel Montgomery.

English versions of a statute, the former shall control. (See Metcalf *vs.* Kahai, 1st Haw. Rep., p. 225; Hardy *vs.* Ruggles *et als.*, ibid, p. 255.) But it seems to us that the same considerations which constrained the Court so to decide in that case, do not exist in the present instance. The deed before us, with the exception of those parts of it which are descriptive, consists of a printed formula, in the two languages, which has been extensively used here, in dealings between natives and foreigners, since the enactment of laws requiring conveyances of real estate to be made in writing. The English version of this formula is, of course, the original, and the Hawaiian merely a translation. There do not exist in the Hawaiian language, two words which would exactly represent the two English words *tenements* and *hereditaments*. The exact legal signification of those terms could not be expressed in Hawaiian without great difficulty, and therefore words, which if used in some other connection, or under other circumstances, would convey a widely different meaning, have, when used in the printed formula of conveyance now before us, been accepted by the general consent of natives and foreigners using such formula, as meaning precisely the same things, and neither more or less than those two legal terms. So far then as purely legal phraseology, or words of technical import, are concerned, it would seem to us both unsafe and unreasonable, to hold that the Hawaiian translation, and not the English original, should govern, when a question arises upon the construction of any part of the deed, where such legal or technical language is used. Such a course would unbar the door to endless litigation and fraud, and involve our courts in a maze of uncertainty.

It is contended, further, on the part of the defense, that the conduct of the grantor, in withdrawing her *luna* from Puuloa, at the time of her execution of the conveyance, and in subsequently, up to the time of her death, forbearing to take or taboo any fish on the reef opposite the land sold to Montgomery, and the like forbearance on the part of the plaintiff, for several years, afterwards, are strong evidence in favor of the defendant, and facts from which it may be fairly inferred, that M. Kekauonohi intended to grant away the fishing ground, or, at least, all her rights in the fishery. To this it is replied, that such a

grant cannot be inferred from circumstances, or from the con-duct of the grantor, but must be found, if at all, in the express language of the deed.

As to the fact of her withdrawing her *luna* from Puuloa, after the sale of that land to Isaac Montgomery, we consider it a natural consequence of the sale, and of slight significance as to any bearing it may be supposed to have upon the disputed question of the fishery. If, however, there was any doubt as to the grantor's intentions, arising from the use of unusual or ambiguous language, then, the fact of her subsequent forbearance to take or taboo fish, upon the place in question, might be regarded as evidence tending to sustain the construction contended for by the defendant. But, it is clear to our minds, for the reasons already stated in remarking upon the descriptive part of the deed, that she did not intend to include therein, or to convey thereby, any part of the fishing ground to Montgomery; nor did she convey to him her individual rights of piscary, under the words, "tenements and hereditaments situate thereon."

None of the rights of piscary possessed by M. Kekauonohi as owner of the fishery, could have passed as a mere appurtenance to the piece of land conveyed to Isaac Montgomery. She could have transferred the fishery, or her right therein, only by an express grant, *eo nomine.* Had she made a deed even of the whole Ahupuaa, by metes and bounds, not including the fishery, nor expressly naming it in the conveyance, it is doubtful if either the fishery or her rights therein would have passed to the grantee.

Again, if the grantor had conveyed the fishery, or her individual rights therein, by name, to Isaac Montgomery, that would not have conferred upon him the *exclusive* right which is now set up by the defendant, because M. Kekauonohi herself was not possessed of an exclusive right. It may even be doubted whether she could have conveyed away the portion of the fishing ground lying opposite to Puuloa, or her special rights therein, so as to divide the fishery, without infringing on the rights of the tenants living on "Honouliuli." Certainly if her grantee had tabooed one kind of fish, on his part of the ground, while she tabooed another kind upon the other part, the rights

of the tenants would have been violated. And if she could have divided the fishing ground into two parts, she could have divided into twenty, and so have rendered the rights of the tenants worthless.

But, while we are clearly of the opinion that M. Kekauonohi did not convey any part of the fishing ground, or of her individual rights therein, to Isaac Montgomery, we are also of opinion that, when he received a conveyance of a portion of the Ahupuaa of " Honouliuli," he acquired along with it a common right of piscary in the fishing ground adjacent. That is to say, he became, for the purposes of the law, governing this subject, a tenant of the Ahupuaa, and as such entitled to take fish in the sea adjoining. We understand the word tenant, as used in this connection, to have lost its ancient restricted meaning, and to be almost synonymous, at the present time, with the word occupant, or occupier, and that every person occupying lawfully, any part of " Honouliuli," is a tenant within the meaning of the law. Those persons who formerly lived as tenants under the Konohikis but who have acquired fee simple title to their *kuleanas,* under the operation of the Land Commission, continue to enjoy the same rights of piscary that they had as *hoaainas* under the old system. (See Joint Resolution on the subject of rights in lands, etc., vol. 2, Statute Laws, p. 70.) If any person who has acquired a *kuleana* on the Ahupuaa of " Honouliuli," should sell and convey his land, or even a part of it, to another, a common right of piscary would pass to the grantee, as an appurtenance to the land. In that case it would not be necessary, we apprehend, to mention the right of piscary in the conveyance—it would pass as an incident. (See Kent's Com., vol. 4, p. 517 ; Comyns's Digest, vol. 4, title Grant, E. 11,) Here, we think, is the great distinction between the rights of the Konohiki, and those of the tenant or occupant, for, while the former holds the fishery as his private property, the latter has only a right of piscary therein, as an incident to his tenancy. This marked distinction in their respective rights must create a corresponding difference in regard to the transfer of those rights.

As the conveyance by the owner of a *kuleana,* of a part of his land to another, would create such a tenancy in the grantee

as would entitle him to a common right of piscary, so, in our opinion, the conveyance to Isaac Montgomery, by M. Kekauonohi, of a part of the Ahupuaa, created such a tenancy, as carries with it, as an appurtenance thereto, under our laws, a common right of piscary; subject, always, to the rights of the grantor, and her legal representatives.

No specific damage having been proved by the plaintiff, we think he is only entitled to recover nominal damages.

Let judgment be entered for the plaintiff, as of the last day of term, in the sum of five dollars damages, together with the costs of suit.

A. B. Bates, Esq., for the plaintiff.

J. Montgomery, Esq., for the defendant.