WILLIAM O. SMITH, E. FAXON BISHOP, ALBERT F. JUDD, WILLIAM WILLIAMSON AND RICHARD H. TRENT, TRUSTEES UNDER THE WILL AND OF THE ESTATE OF BERNICE PAUAHI BISHOP, DECEASED, *v.* DAVID KUI LAAMEA.

No. 1730.

ERROR TO CIRCUIT COURT FIRST CIRCUIT.
HON. E. K. MASSEE, JUDGE.

ARGUED MARCH 15, 16, 1927.                    DECIDED APRIL 28, 1927.

PERRY, C. J., BANKS AND PARSONS, JJ.

FISH AND FISHERIES—*owner of portion of ahupuaa—right of piscary in common, in sea adjoining.*

> One who acquires title to a portion of an ahupuaa either by conveyance or by adverse possession becomes entitled to a right of piscary in the sea adjoining in common with others, subject always to the rights of the konohiki in the fishery.

ADVERSE POSSESSION—*permissive occupancy—change of nature of possession.*

> An occupation of land which in its origin was by permission of the true owner cannot be changed by the occupant into an adverse possession without clear and explicit notice, by words or by acts, to the true owner that the holder is claiming adversely.

Opinion of the Court.

SAME—*same—presumptions and burden of proof.*

The presumption is that a possession which in its origin was permissive continued permissive and the burden is upon the adverse claimant to show that the nature of the possession changed and became hostile.

EVIDENCE—*immateriality.*

It is proper to instruct a jury to disregard certain evidence admitted when it has no tendency to prove or to disprove any of the issues in the case.

APPEAL AND ERROR—*assignments—insufficiency.*

An assignment that the trial court erred in denying a motion for a new trial, which does not specify in what respect the court so erred, is insufficient and does not call for consideration by the appellate court.

SAME—*rejected evidence—offer of proof.*

The court will not consider an exception to the sustaining of an objection to a question when the record does not disclose any offer to show what the answer would be and that the answer would be material and competent evidence.

WITNESSES—*cross-examination—discretion of trial judge.*

In the examination of witnesses considerable latitude is allowed trial judges and the exercise of their discretion will not be interfered with except in clear cases of abuse.

TRIAL—*remarks of court in presence of jury—absence of objection at the time.* ·

An objection to an alleged prejudicial remark made by the trial judge in the presence of the jury will not be considered in this court when the attention of the trial judge was not called to the matter at the time and an opportunity was not given him to correct the alleged error and no objection or exception was made or noted to the remark.

OPINION OF THE COURT BY PERRY, C. J.

This is an action at law to quiet the title to a piece of land containing an area of 1.60 acres situated within the ili of Maunalua on the Island of Oahu. At the trial it was expressly admitted by the defendant that the paper title to the whole ili of Maunalua is in the present plaintiffs and that the ili of Maunalua includes

the small lot which is the subject of this suit.  In other words, it was expressly admitted by the defendant that the paper title to the piece of land in question is in the plaintiffs.  The defendant's sole claim was that he had acquired title to the land by adverse possession for more than the statutory period of ten years.  The plaintiffs having proven their paper title, in the main by the admissions of the defendant, rested.  The defendant thereupon introduced evidence tending to support his claim of adverse possession.  Thereafter the plaintiffs introduced evidence which, while recognizing that the defendant had lived upon the land for more than ten years next preceding the commencement of the action, nevertheless tended to show that that occupancy was not hostile and adverse but was permissive and with full recognition of the title of the true owners.  Some evidence in rebuttal was introduced by the defendant.  The jury returned a verdict in favor of the plaintiffs and against the defendant and judgment was entered accordingly.  The case is brought to this court by writ of error.

·The jury having been selected and sworn, the trial proper commenced on April 20, 1926, and continued for twenty-two days, until and including May 25, 1926.  Many witnesses were examined on each side and some documentary evidence was introduced. The trial throughout was conducted with care and thoroughness.  The transcript of the testimony adduced covers fourteen hundred pages.  There was evidence which, if it had been believed by the jury, would have supported in law a verdict for the defendant; but, as expressly admitted in this court by defendant's counsel and verified by us by an examination of the record, there was also ample evidence in law justifying the verdict which was rendered in favor of the plaintiffs.  There is not the

slightest· reason for setting aside the verdict on the theory of lack of evidence to support it. The errors assigned relate, in the main, to the giving and the refusal of instructions and to rulings admitting or excluding evidence.

1. It is assigned as error that the presiding judge refused to give defendant's requested instruction No. 15, reading as follows: "If you believe from the evidence in this case that David Kui Laamea paid $1.00 a year solely for the right to fish in the sea fisheries of Maunalua, the fact of such payment would not prevent said Laamea from acquiring the property in question by adverse possession; provided he complied with the requisites of adverse possession as contained in these instructions." Upon this subject the following instruction, being plaintiffs' No. 21, was given: "The defendant admits that he paid the Maunalua Ranch one dollar a year and claims that it was for the privilege of fishing in the sea fishery of Maunalua only. In this connection I instruct you that the owner of any portion of the ili of Maunalua would have the right to fish in the sea fishery without paying therefor. Persons not owning land in Maunalua would have no right to fish there without first obtaining the privilege from the owner. It is for you to consider, therefore, whether by paying one dollar a year the defendant recognized and conceded that he did not own or claim to own the land in dispute, and if you find the fact to be that such payment constituted a recognition of title in Mr. Damon or the trustees of the Bishop Estate, then his occupancy of the land was not adverse possession within the meaning of the law, and it will be your duty to return a verdict for the plaintiffs." The defendant's claim was that one Paakai had for a period of years prior to his death occupied the land in question and that the defendant took up his

residence on the same land shortly before Paakai's death; that shortly prior to Paakai's death Paakai made an oral gift to the defendant of the land and of his canoes and nets and perhaps other personalty; and that beginning with Paakai's death and continuing until the institution of this action the defendant had occupied the land under claim of ownership and in a manner altogether complying with the requisites of adverse possession. The plaintiffs sought to show by their evidence that Paakai's occupancy was permissive and not adverse, that after Paakai's death someone other than the defendant had occupied the land in question, that the defendant, like Paakai, had not occupied as large a piece of land as is now claimed by him and is described in the present declaration and had not lived on the land for as long a period of years as he claims to have there lived and that in any event his occupancy, like Paakai's, was, until a few days before the commencement of this action, permissive and not adverse. The plaintiffs sought to prove the alleged permissive nature of the occupancy of Paakai and of the defendant by showing, that which is undisputed, that no kuleanas whatever were ever awarded by the land commission out of the lands of the ili of Maunalua, that certain Hawaiians were permitted by the plaintiffs' lessee, Mr. S. M. Damon, to live upon portions of the ili of Maunalua, subject to the duty to perform labor for the Maunalua Ranch at stated times, ordinarily on a stated day of each week, such labor consisting of the trimming of trees, the cleaning of water holes for use by the cattle, the clearing of the land from noxious weeds and occasionally the driving and branding of cattle; and further that the privilege of living upon the land and the further privilege of fishing in the sea of Maunalua

depended upon the duty of each dweller to pay a nominal
rent of one dollar per year.  It should be added that the
evidence of the plaintiffs further tended to show that
the performance of this labor and the payment of this
rent also entitled the dwellers to pasture one or more
horses upon the land of Maunalua but that the duty to
labor and to pay the rent applied irrespective of whether
the dwellers did or did not have horses to be pastured
on the ili.  On the other hand there was some evidence
from the defendant and perhaps from others of his
witnesses to the effect that the payment of one dollar
per year was merely for the privilege of fishing in the
sea adjoining the ili.

As long ago as 1858 it was declared by this court that
one who receives a conveyance of a portion of an ahu-
puaa acquires "along with it a common right of piscary
in the fishing ground adjacent",—that is to say, he
becomes "for the purposes of the law governing this
subject a tenant of the ahupuaa and as such entitled to
take fish in the sea adjoining." *Haalelea* v. *Montgomery,*
2 Haw. 62, 71.  The court, continuing, said at pages
71, 72: "We understand the word tenant, as used in
this connection, to have lost its ancient restricted mean-
ing, and to be almost synonymous at the present time
with the word occupant, or occupier, and that every
person occupying lawfully any part of" an ahupuaa "is
a tenant within the meaning of the law.  Those persons
who formerly lived as tenants under the konohikis but
who have acquired fee simple title to their kuleanas,
under the operation of the Land Commission, continue
to enjoy the same rights of piscary that they had as
hoaainas under the old system.  *  *  *. If any person
who has acquired a kuleana on the ahupuaa of Hono-
uliuli should sell and convey his land, or even a part of
it, to another, a common right of piscary would pass

to the grantee, as an appurtenance to the land. In that case it would not be necessary, we apprehend, to mention the right of piscary in the conveyance—it would pass as an incident.  *  *  *  As the conveyance by the owner of a kuleana, of a part of his land to another, would create such a tenancy in the grantee as would entitle him to a common right of piscary, so, in our opinion, the conveyance to Isaac Montgomery by M. Ke-kauonohi, of a part of the ahupuaa, created such a tenancy as carries with it, as an appurtenance thereto, under our laws, a common right of piscary; subject, always, to the rights of the grantor" (the konohiki) "and her legal representatives." Within the meaning of the law as thus declared, one who by adverse possession acquires title to a portion of an ahupuaa is an occupant or tenant and entitled to the common right of piscary referred to. No argument to the contrary has been presented in this case.

If the defendant became the owner, as he claimed he did, of the land in question he became also the owner of the appurtenant right to fish in the sea of Maunalua in common with others having that right and subject always to the right of the konohiki to set apart a designated kind of fish for himself or, in the alternative, to share in the proportions prescribed by law in all catches of fish made by the hoaainas or tenants or holders of small portions of land within the ili. It may be that it ought to be held as a matter of law that the payment to the konohiki of a yearly rental for the right to fish would be a recognition that the tenant was not the owner of any land within the ili but it is unnecessary to go that far in this case. The least that can be said in favor of the plaintiffs is that such a yearly payment was susceptible of being understood by the jury as a recognition by the defendant that he was

not the owner of any land within the ili and that his occupancy of the land in question was purely permissive and without claim to ownership. Instruction No. 15, therefore, was incomplete and misleading and might well have been regarded by the jury as a direction that as a matter of law the payment of the yearly rent for the right to fish could not be under any circumstances a recognition of the konohiki's title to the land or evidence of such recognition. Instruction No. 21, requested by the plaintiffs, was more nearly complete and was as liberal in favor of the defendant as could be expected, leaving as it did to the jury to say whether, under all the circumstances of the case and upon all the testimony and other evidence adduced, the defendant thereby intended to recognize and did recognize the title of the true owners to the land as well as to the fishery.

2.    The defendant complains of the giving of plaintiffs' instruction No. 11, which reads: "If you find from the evidence that the residence of Paakai upon the land of Maunalua was a mere permissive occupation, and that he did not hold or claim adversely to the owners of the ili of Maunalua, and if you further find that the defendant in this case, after the death of Paakai, entered upon the land with the understanding and intention on his part to continue in the same manner and under the same circumstances as Paakai occupied, then the beginning of the defendant's occupancy must be regarded as permissive and not adverse. And if the defendant's occupation originated in such permissive manner, nothing less than clear and explicit notice by him to the owner of the ili by word or act that he intended to claim adversely could change the character of his possession from a permissive to an adverse one. In the absence of any such notice the permissive character of the defendant's possession must be regarded as having con-

tinued, and a permissive possession cannot ripen into an adverse title no matter how long it may continue. And so I charge you that if you find from the evidence that Paakai's occupancy was a permissive one and not hostile to the owners of the ili, and that the defendant's occupation began under the same circumstances, and if you further find that there was no such notice of a change in the character of his holding until less than ten years ago, it will be your duty to return a verdict for the plaintiffs." This instruction correctly stated the law. If the defendant's occupation of the land was permissive in its inception the presumption was that it continued to be of the same nature and the burden was upon the defendant to prove that by words or acts sufficient to give notice to the contrary to an ordinarily prudent and vigilant owner he, the defendant, had changed its character and was thereafter occupying adversely. In *Dowsett* v. *Maukeala,* 10 Haw. 166, 168, this court upheld an instruction stating that "where the occupation has been with the permission of the owner of the land, in order that adverse possession may begin to run it is necessary that some direct notice be given to the owner that the occupier is holding hostile to himself." The court said, referring to an occupation which in the beginning was permissive, "such tenancy would therefore, in law, be considered as continuing until some act of theirs" (meaning the adverse claimants) "changed their holding from the permissive nature to one of an adverse or hostile nature." In *Smith* v. *Hamakua Mill Co.,* 15 Haw. 648, 657, the court said: "Possession once shown to have been at its inception permissive or in subordination to the true owner's title, is presumed, in the absence of any showing to the contrary, to continue of the same character,—in other words, the burden is on the possessor to show that it thereafter became hostile." "Where

possession is originally taken and held under the true owner, a clear, positive, and continued disclaimer and disavowal of title, and an assertion of an adverse right brought home to the true owner, are indispensable before any foundation can be laid for the operation of the statute of limitations. Without this the length of the occupancy is immaterial and does not affect the title, and possession for the full period of limitation must have elapsed after such repudiation before title based thereon can be acquired. If the rule were otherwise the greatest injustice might be done." 2 C. J. 134, §230. Without such knowledge the true owner has the right to rely upon the fiduciary relation under which the possession was originally given. A permissive occupant should not be allowed to change the character of the possession and acquire title by a mere secret, mental process.

3. Plaintiffs' instruction No. 12 was given. It read: "Testimony has been admitted concerning a gate which at one time existed at a point mauka of the horse paddock. It is undisputed that that was a gate erected by the owner of the ranch, and there is no contention that it was erected by anyone claiming title to the land in dispute against the trustees of the Bishop Estate. I therefore instruct you that that testimony is irrelevant and immaterial and should not be considered by you in determining the question of title to the land in dispute in this case." Whether this instruction was correct depends upon the state of the evidence. From a careful examination of the transcript of the testimony adduced it appears that there was undisputed evidence to the effect that the gate referred to in the instruction was erected by the owners of the ili or those under them; that the only evidence on the subject was to the effect that it was erected and maintained for purely ranch purposes; that it was situated at a point at least four

hundred or five hundred feet distant from the lot in controversy and perhaps, as one witness testified, as much as a quarter of a mile away; and that its erection and maintenance had no relation whatever to the lot in question or to any issue litigated concerning that lot. There was no evidence whatever tending to show that the gate was either erected or maintained by or for the defendant nor was there any evidence which could be correctly construed or understood by the jury to indicate that by the erection and maintenance of the gate the defendant was asserting title to the lot in question or that the plaintiffs or their predecessors in interest were thereby in any wise admitting that the defendant had title. Under these circumstances it was correct to instruct the jury that the evidence concerning the gate was wholly immaterial.

4. It is assigned as error that the trial court erred in denying defendant's motion for a new trial. It is not shown by the record herein that any such motion was made. Moreover, the assignment does not show in what respect the court erred in denying the motion. The assignment is too general to be available to the plaintiff in error. *In re Estate of Violet Malani, ante,* p. 713.

5. The assignment that the trial court "erred in entering judgment on June 21st, 1926, against the defendant-plaintiff in error and in favor of the plaintiffs-defendants in error" is likewise insufficient. It presents no specific question of law. Nor is it pointed out in the brief wherein the court erred in entering judgment except that it is argued that the verdict was wrong because against the preponderance of the evidence. It is well settled in this jurisdiction that upon exceptions and writ of error this court will not consider questions relating to the weight of the evidence or the credibility

of the witnesses.   The jury alone decides issues of that nature.

6.   The court sustained plaintiffs' objection to a question addressed to the defendant by his attorney, "Did Paakai tell you what you should do with the land, pertaining to the place where he was living, up to and including the grave of his wife?"   There was no offer to show and it does not in any way appear what the witness' answer to the question would have been if the objection had been overruled.   It is well settled that in the absence of such an offer the appellate court will not presume that the answer would have been favorable to the appellant or, in other words, that the ruling was prejudicial.   *Yim Fat* v. *Gleason,* 24 Haw. 210, 212; *Territory* v. *Hart,* 24 Haw. 349, 358; *De Freitas* v. *De Freitas,* 25 Haw. 717, 718; *Hanu* v. *Yamaichi, ante,* pp. 564, 571.

7.   Against defendant's objection plaintiffs were permitted to ask the defendant upon cross-examination, "How much of what you said at the last trial was not the truth?"   The answer was "No"; and no other questions were asked him on the subject.   The contention of the appellant seems to be that the question was the equivalent of an unwarranted slur on the character of the defendant.   Prior to the asking of the question the defendant had admitted several contradictions between his testimony given on the first trial and that given on this trial.   Considerable latitude must be allowed trial judges with reference to the cross-examination of witnesses and the exercise of their discretion will not be interfered with except in clear cases of abuse.   *Flint* v. *Flint,* 15 Haw. 313, 315; *Territory* v. *Goo Wan Hoy,* 24 Haw. 721, 727; *Kametani* v. *Okuhama,* 28 Haw. 458, 461.   We do not find any abuse of discretion.

8.   In overruling an objection by the defendant to a

question addressed to him on cross-examination, "Do you admit or deny that you testified at the last trial of this case that you were 25 or 26 years old when you married Kalamau", the court said: "I can see nothing improper about it. The fact as you have stated and admitted that his answers have not been uniform in some questions that counsel has asked, in order to get an answer he has placed it in a different form, he may still have another answer at the time he is asked." No exception was noted or objection made at the time to the court's remark, on the ground that it unnecessarily reflected upon the defendant. No opportunity was given to the presiding judge to correct the error, if any there was, in making the remark or to instruct the jury to disregard it. Under these circumstances a new trial cannot be granted. Moreover, the statement of the court that the witness "may still have another answer at the time he is asked" was a correct statement of a reason for overruling the objection and was doubtless made with that thought alone in mind and without any intention to reflect unnecessarily upon the defendant.

9. The defendant objected to the following question asked by the plaintiffs of the defendant: "The question now is whether you intended to take or claim anything that Paakai had no legal right to give you." The contention is that an answer to the question involves the formation of a legal opinion. We think the question was properly allowed.

There are a few other assignments of error based upon rulings upon evidence. They are all of an inconsequential nature. The case was tried at great length and thoroughly. The trial continued for five weeks. If there were any errors in the rulings not already considered, they were not of such importance as to require or justify the granting of a new trial.

It may be that some of the assignments of error here considered in detail were not sufficiently specific to call for consideration at the hands of the court. We have preferred, however, to dispose of them upon the merits, believing that that would be more satisfactory to all concerned. So, also, the plaintiffs' contention that no adverse possession could accrue in favor of the defendant during the existence of the lease to S. M. Damon is not passed upon. The verdict of the jury was against the theory of adverse possession and we have found no error in the record.

The judgment is affirmed.

*J. G. Tyssowski* (*N. K. Lyman* with him on the briefs) for plaintiff in error.

*A. G. M. Robertson* (*Robertson & Castle* on the briefs) for defendants in error.